IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHN RICHARD BEACH            )
                              )
v.                            ) NO. 3:08-0569
                              ) JUDGE CAMPBELL
HEALTHWAYS, INC., et al.      )

MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Consolidated Class Action Complaint for Violation of Federal Securities Laws (Docket No. 65). The Court heard oral argument on Defendants' Motion on February 27, 2009. For the reasons stated herein, Defendants' Motion to Dismiss is DENIED.

INTRODUCTION

Plaintiff brought this securities fraud action against Healthways, Inc. ("the Company") and its senior executives on behalf of purchasers of common stock of the Company between July 5, 2007 and August 25, 2008. Consolidated Class Action Complaint (Docket No. 56). Plaintiff alleges claims for violations of federal securities laws based upon alleged (1) materially false and/or misleading statements; (2) "controlling person" liability; and (3) insider trading violations.

Defendants have moved to dismiss Plaintiff's claims, arguing (1) Plaintiff has not specifically pled false or misleading statements; (2) Defendants had no duty to disclose information concerning individual customer contracts; (3) the alleged misstatements are protected by the "safe harbor" provisions; (4) Plaintiff has not sufficiently pled a strong inference of scienter; (5) Plaintiff

fails to state a claim for insider trading; and (6) Plaintiff fails to state a claim for "controlling person" liability.[1]  Docket No. 66.

## MATERIALLY FALSE AND/OR MISLEADING STATEMENTS

In any private action arising under the federal securities laws in which the plaintiff alleges that the defendant made an untrue statement of a material fact or omitted a material fact necessary in order to make the statements made, in light of the circumstances in which they were made, not misleading, the complaint must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and state with particularity the facts upon which that belief is formed.  15 U.S.C. § 78u-4(b).  In order to state a claim, a plaintiff must allege: (1) a misrepresentation or omission (2) of a material fact that the defendant had a duty to disclose (3) made with scienter (4) justifiably relied upon by the plaintiff and (5) proximately causing the plaintiff injury.  *Ley v. Visteon Corp.*, 543 F.3d 801, 806 (6th Cir. 2008).

Under the PSLRA's heightened pleading instructions, any private securities complaint alleging that the defendant made a false or misleading statement must: (1) specify each statement alleged to have been misleading and the reason(s) why the statement is misleading; and (2) state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2508 (2007) (citing 15 U.S.C. § 78u-4(b)).

---

[1] Defendants also contend that Plaintiff has pled no factual basis to extend the proposed class period beyond the Company's February 26, 2008 announcement.  Docket No. 66, p. 20.  This argument shall be reserved for the Motion for Class Certification, at which time the scope of the class, if one is certified, and the extent of the Class Period will be determined.

Plaintiff asserts that the Company participated in Phase I of a Medicare Health Support ("MHS") pilot program which set for its goal a 5% savings target in disease management services. Plaintiff's Complaint alleges that, under the terms of the contract between the Company and the government, failure to meet the 5% savings target would obligate the Company to reimburse the government for millions of dollars in fees paid to the Company over the course of the pilot program and would also make the Company's participation in any Phase II of the program highly unlikely. In January of 2008, the government revised its savings target for the MHS program from 5% cost savings to a break-even target.

Plaintiff alleges that Defendants knew, and failed to disclose, that the Company was not meeting, and would not be able to meet, either the 5% cost savings target or the revised break-even savings target of the MHS Pilot Programs. Plaintiff alleges that Defendants also knew, and failed to disclose, that the Company's failure to meet those targets could result in the Company's having to reimburse millions of dollars in fees. Plaintiff alleges that Defendants knew, and failed to disclose, that the Company's participation in the second phase of the MHS Pilot Programs (and anticipated revenue therefrom) was extremely unlikely because of this failure to achieve target savings. Complaint, ¶¶ 38-56. Plaintiff alleges that, to the contrary, Defendants led the public to believe that participation in the second phase of the MHS program was likely. *See, e.g.,* Complaint, ¶ 113, 116-17.

Defendants maintain that their disclosures concerning the MHS program consistently stated that the Company was not meeting the 5% target and that it would not recognize these fees as income or revenue; that the disclosures were accurate; and that there were no material misrepresentations or omissions.

3

The Court finds that Plaintiff's Complaint sufficiently alleges the particulars of the alleged false and misleading statements, many of which involve *failure* to disclose, to survive a motion to dismiss. For example, Plaintiff asserts that Defendants, in announcing the government's adjustment from a 5% savings target to a break-even target, failed to disclose that the Company would not be able to achieve even that lower target; but, rather, Plaintiff contends that Defendants misled the public by concealing that fact, and the stock prices were inflated as a result. In addition, Plaintiff avers that Defendants knew, throughout the proposed Class Period, that the Company was not saving the government any money and, thus, would be very unlikely to participate in any Phase II of the MHS programs. Yet, Plaintiff claims, Defendants continued to assure the public that the Company's participation in Phase II was likely.

A company is generally under no obligation to disclose its expectations for the future to the investing public. *City of Monroe Employees Retirement Sys. v. Bridgestone Corp.*, 399 F.3d 651, 670 (6th Cir. 2005). If a company chooses to volunteer such information, however, its disclosure must be full and fair, and courts may conclude that the company was obligated to disclose additional material facts to the extent that the volunteered disclosure was misleading. *Id*. The securities laws therefore require an actor to provide complete and non-misleading information with respect to the subjects on which he undertakes to speak. *Id*.; *see also Rubin v. Schottenstein, Zox & Dunn*, 143 F.3d 263, 267-68 (6th Cir. 1998).

The nature of the disclosures, timing of the disclosures, and materiality of the information are all factual issues, which cannot be decided on a motion to dismiss. *In re Direct General Corp. Securities Litigation*, 398 F.Supp.2d 888, 894 (M.D. Tenn. 2005). Similarly, the issue of whether

4

the omissions caused the Company's disclosures to be misleading to a reasonable investor involves questions of fact, to be considered by the jury in the context of all the circumstances.

"Although the PSLRA imposes heightened pleading requirements in securities cases and limits the scope of inferences to which plaintiffs are typically entitled in the face of a Rule 12(b)(6) motion, it does not convert such a motion into some sort of a preliminary summary judgment motion in which the parties compare their respective collections of supporting facts and inferences." *In re Unumprovident Corp. Securities Litigation*. 396 F.Supp.2d 858, 878 (E.D. Tenn. 2005).

Plaintiff also alleges that Defendants made false and/or misleading statements with regard to the loss of customer contracts. Plaintiff alleges that Defendants knew, and failed to disclose in the fiscal 2007 Form 10-K, 3Q07 Form 10-Q and 1Q08 Form 10-Q, the fact that customers were canceling contracts and/or demanding additional services for less money and/or rebates of fees already paid. Complaint, ¶ 58. Plaintiff asserts that Defendants knew that the earnings guidance they communicated to investors during the Class Period could not be achieved and included revenue for contracts the Company was unlikely to obtain. Complaint, ¶¶ 62-64, 69, 71-72, 85 and 87.

For example, Plaintiff alleges that Defendants knew, and failed to disclose, that WellPoint, which accounted for $40 million of fiscal 2008 projected revenue, would actually generate no more than $4 million in revenue. Complaint, ¶ 92. Plaintiff alleges that Defendants knew, and failed to disclose, that the Company's Health Support Departments' fiscal 2008 projected revenues were inaccurate. Complaint, ¶¶ 97 and 101. Plaintiff alleges that contract cancellations had a material impact on the Company's future operating results and made the revenue and earnings "guidances" produced by the Company false and misleading.

5

Defendants contend that they had no duty to disclose information concerning individual customer contracts and that their public statements were not false or misleading.

In order to be actionable, a misrepresentation or omission must pertain to material information that the defendant had a duty to disclose. *Bridgestone,* 399 F.3d at 669. A duty to affirmatively disclose may arise when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete or misleading prior disclosure. *Id*. Whether or not a statement is material turns on a fact-intensive test. *Bridgestone*, 399 F.3d at 669. Materiality depends on the significance the reasonable investor would place on the withheld or misrepresented information; that is, would the information, had it been presented accurately, have significantly altered the "total mix" of information made available? *Id*. Defendants argue that the Company had no obligation to discuss the status of individual customer contracts or relations, but if the status of those contracts materially affected the earnings of the Company, as Plaintiff alleges, then a reasonable investor could have deemed that information significant.

Defendants also contend that the Company was not "imploding," but rather was making money, but nothing in the securities laws requires that a company be imploding or failing in order for there to be securities fraud if the elements of the cause of action are met. Defendants also argue that Plaintiff's statements are inaccurate, but this stage of the litigation is not the time to test the accuracy of Plaintiff's allegations.

For these reasons, the Court finds that whether Defendants had a duty to disclose this information concerning lost or revised contracts involves, among other things, the materiality and verifiability of the information, and Plaintiff has sufficiently pled the claim to survive a motion to dismiss. Plaintiff alleges that once the Company chose to speak on these matters, its failure to

6

include material information upon which a reasonable investor would rely is a violation of the securities laws. *See Bridgestone*, 399 F.3d at 670 and *Rubin*, 143 F.3d at 267-68. Under the standards which must be applied on this Motion to Dismiss, the Court finds that Plaintiff has stated a claim for which relief could be granted.

## SAFE HARBOR

Defendants argue that Plaintiff attempts to base claims upon statements that are protected by the "Safe Harbor" provision of the PSLRA. That provision provides that Defendants are protected with respect to any forward-looking statement which "is identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(i)(A)(i). Also, the Defendants are protected if the Plaintiff fails to prove that the forward-looking statement was made with actual knowledge that the statement was false or misleading. 15 U.S.C. § 78u-5(c)(i)(B).

Plaintiff contends that the alleged misstatements and omissions are statements of present or historical facts, that Defendants knew the statements were false or misleading, and that the statements were not accompanied by adequate cautionary language.

The Court finds that Plaintiff has sufficiently alleged that Defendants made statements of present or historical facts which they knew were false and misleading. Whether the statements were accompanied by adequate cautionary language depends upon, statement by statement, what the actual facts were at the time the statement was made and what cautionary language was used. The Court must accept the facts as asserted by Plaintiff, for purposes of this Motion, and it finds that

7

Plaintiff has sufficiently alleged facts to overcome the "safe harbor" defense at this stage of the litigation.

## SCIENTER

Defendants maintain that Plaintiff has failed to plead the "strong inference" of scienter necessary under the PSLRA. The PSLRA provides: "In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

Plaintiff alleges, throughout the Complaint, that the Company and its senior executives had actual knowledge of the alleged misrepresentations and omissions. *See, e.g.,* Complaint, ¶¶ 41-45, 54, 56, 81-82, 88, 90-92 and 96. In addition, Plaintiff specifically alleges scienter in paragraphs 164-65.

The Supreme Court has established certain "prescriptions" regarding Section 10(b) securities fraud actions in *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 127 S.Ct. 2499 (2007). The Court noted that on a Rule 12(b)(6) motion to dismiss, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true. *Id*. at 2509.

8

The Court also held that courts must consider the complaint in its entirety,[2] as well as other sources courts ordinarily examine when ruling on such motions to dismiss, such as documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *Id*. In determining whether the pleaded facts give rise to a strong inference of scienter, the court must take into account plausible opposing inferences; in other words, the court must consider plausible non-culpable explanations for the defendants' conduct as well as inferences favoring the plaintiff. *Id.* at 2509-2510. The inference that the defendants acted with scienter need not be irrefutable or even the most plausible of competing inferences. *Id*. at 2510.

The court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically: when the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference? *Tellabs*, 127 S.Ct. at 2511. The Supreme Court summarized its holding as follows: "A plaintiff alleging fraud in a § 10(b) action, we hold today, must plead facts rendering an inference of scienter *at least as likely as* any plausible opposing inference. At trial she must then prove her case by a 'preponderance of the evidence.'" *Id*. at 2513 (emphasis in original).

The Court finds that, viewing the Complaint as a whole, Plaintiff has sufficiently alleged facts rendering an inference of scienter at least as likely as any plausible opposing inference. Thus, for purposes of a motion to dismiss, Plaintiff has sufficiently alleged scienter. Whether a jury ultimately finds scienter is a matter for a later time.

---

[2] All allegations must be considered collectively; the significance that can be ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint. *Tellabs*, 127 S.Ct. at 2510.

9

INSIDER TRADING

Plaintiff alleges that Defendants Cigarran, Taylor, Hunter and Kelliher engaged in insider trading in violation of § 20A of the PSLRA. That section provides a private right of action to buyers of securities who buy "contemporaneously" with anyone who purchases or sells a security while in possession of material, nonpublic information. 15 U.S.C. § 78t-1(a).

To plead a § 20A cause of action, a plaintiff must allege a requisite independent, predicate violation of the securities law and show that he has standing under § 20A because he, contemporaneously with the purchase or sale of securities that is the subject of such violation, purchased or sold securities of the same class. *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 258 F.Supp. 2d 576, 599 (S.D. Tex. 2003). When an insider trades in his company's stock, he has a duty to disclose any nonpublic, material information he knows about the company before trading. *J & R Marketing v. General Motors Corp.*, 549 F.3d 384, 398 (6th Cir. 2008).

The Complaint alleges that Defendants Cigarran, Taylor, Hunter and Kelliher knew they were in possession of materially adverse, nonpublic information and sold shares at artificially inflated prices in violation of this Section.

Defendants argue that because Plaintiff has failed to state an underlying claim, he cannot state this claim either. Defendants also argue that Plaintiff must allege that he purchased stock *on the same date* as each of these Defendants sold their stock in order to state a claim under this Section. The statute does not define "contemporaneous," and the courts have varied on how they define this term. Different courts have found that contemporaneous means that the insider and the plaintiff must have traded anywhere from on the same day, to less than a week, to within a

10

month, to the entire period while relevant and nonpublic information remained undisclosed. *In re Enron*, 258 F.Supp.2d at 599-600 (citing cases).

The Court finds that, for purposes of this Motion to Dismiss, alleging "contemporaneous" sales by the Defendants is sufficient. The Complaint sufficiently alleges the requirements of the statute --- that is, a requisite independent, predicate violation of the securities law and contemporaneous purchase or sale of securities with the purchase or sale of securities by these "insider" Defendants.

## CONTROLLING PERSON LIABILITY

The law provides that any person who, directly or indirectly, controls any person liable under the securities law shall also be liable jointly and severally, with and to the same extent as such controlled person, to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action. 15 U.S.C. § 78t(a).

Plaintiff alleges that the individual Defendants acted as controlling persons of the Company and, by reason of their conduct, are liable pursuant to this section. Defendants assert that because there is no claim stated for a primary violation, there can be no controlling person liability as well.

Whether a person is a controlling person is normally a question of fact that cannot be determined at the pleading stage. *In re Direct General Corp. Securities Litigation*, 398 F.Supp. 2d 888, 897-98 (M.D. Tenn. 2005). Plaintiff alleges that the individual Defendants, by reason of their positions as officer and/or directors of the Company and their ownership of Company stock, had the power and authority to cause the Company to engage in the wrongful conduct alleged. Complaint, ¶ 180; *see also* individual allegations of scienter cited above.

11

The Court finds that Plaintiff has sufficiently alleged controlling person liability to survive a motion to dismiss. As with other issues explained above, whether these Defendants were actually controlling persons cannot be determined at this stage of the litigation.

CONCLUSION

For all these reasons, Defendants' Motion to Dismiss (Docket No. 65) is DENIED.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE

12