IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JOHN RICHARD BEACH )
)
v. ) NO. 3:08-0569
) JUDGE CAMPBELL
HEALTHWAYS, INC., et al. )

MEMORANDUM

Pending before the Court is Lead Plaintiff's Motion for Class Certification (Docket No. 93). For the reasons stated herein, Plaintiff's Motion is DENIED.

FACTS

In this securities fraud action against Healthways, Inc. ("the Company") and its senior executives, Plaintiffs allege that Defendants made materially false and/or misleading statements concerning the Company's stock during the time period of July 5, 2007, to August 25, 2008. Lead Plaintiff West Palm Beach Firefighters' Pension Fund ("the Fund") seeks class certification of this action and appointment as representative of the proposed class.

The Fund asserts that it meets all the requirements of Fed. R. Civ. P. 23 for class certification, arguing that the number of potential plaintiffs is sufficiently numerous, there are common questions of law and fact, the proposed lead plaintiff's claims are typical of the class, and the proposed lead plaintiff will fairly and adequately represent the class. The Fund also claims that the common questions predominate in this action and a class action is superior to other available methods.

Defendants, on the other hand, contend that, while the potential plaintiffs may be sufficiently numerous, the Fund cannot demonstrate that its claims are typical of the proposed class or that it can

adequately represent the interests of the class. Specifically, Defendants argue that the Fund differs significantly from other proposed class members in that (1) the Fund's investment manager relied on discussions with Company management and customers in deciding to purchase Company stock; (2) the Fund's investment manager knew the supposedly undisclosed facts on which the Complaint herein is based; and (3) the Fund's investment manager did not rely on the integrity of the market in deciding to purchase Company stock. Thus, Defendants contend, the Fund's unique circumstances and the availability of unique defenses to the Fund's claims put it in direct conflict with other proposed class members. In addition, Defendants argue that the Fund has waived its attorney-client privilege and that alone is grounds for denying class certification.

## CLASS ACTIONS

In order to certify a class, the Court must be satisfied that Plaintiffs have met the requirements of both Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure. Rule 23(a) establishes four requirements for class certification: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of those of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

Rule 23(b) authorizes a class action when (1) questions of law or fact common to the class predominate over questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and sufficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

A class action will be certified only if, after rigorous analysis, the Court is satisfied that the prerequisites of Rule 23(a) have been met and that the action falls within one of the categories under

Rule 23(b). *Castillo v. Envoy Corp.*, 206 F.R.D. 464, 467-68 (M.D. Tenn. 2002). The decision whether to certify a class, committed to the sound discretion of the district judge, turns on the particular facts and circumstances of each individual case. *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 479 (W.D. Mich. 1994).

Numerosity

The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members is impracticable. Defendants have conceded that Plaintiffs have met the numerosity requirement (Docket No. 115, p.5). Therefore, the Court finds that the Fund has carried its burden of establishing numerosity required under Rule 23(a).

Commonality

The question of whether there are common issues of law or fact is qualitative rather than quantitative, and there need be only one single issue common to all members of the class in order to satisfy the requirement. *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6th Cir. 1996).

The Fund contends that the Defendants injured all class members in the same way through the same misrepresentations and omissions during the same period. The Fund asserts that those common questions include:

> (1) whether the Exchange Act was violated by Defendants' acts and omissions;
>
> (2) whether the information disseminated by Defendants during the relevant period misrepresented facts about the Company's performance and financial condition;
>
> (3) whether Defendants' statements omitted material facts necessary to make those statements, under the circumstances, not misleading;

3

(4) whether the market price of Company stock during the relevant period was artificially inflated because of misrepresentations by Defendants;

(5) whether Defendants acted knowingly or recklessly in misrepresenting material facts; and

(6) whether the Fund and other members of the class have sustained damages and, if so, the appropriate measure thereof.

The Court finds that the Fund has carried its burden of establishing commonality under Rule 23(a).

Typicality and Adequacy

The claims of the representative party must be typical of the claims of the class and the representative party must be able to fairly and adequately protect the interests of the class in order to meet the requirements of Rule 23(a). In other words, there must be a nexus between the class representative's claims or defenses and the common questions of law or fact which unite the class. *Taylor v. Flagstar Bank*, 181 F.R.D. 509, 517 (M.D. Ala. 1998). A plaintiff's claim is typical if it arises from the same event or practice or course that gives rise to the claims of other class members or if it is based on the same legal theory. *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 443 (S.D. Ohio 2009). The commonality and typicality requirements are closely related because they both help determine whether the claim of the named plaintiff and those of the class are so interrelated that the interests of the absent class members will be protected. *Id*. at 444.

The Fund contends that it meets the typicality requirement because its claims are based upon the same theories and will be proven by the same evidence as those of the proposed class members. Thus, the Fund maintains, its interests are aligned with those of the proposed class and, in pursuing its own claims, it will adequately advance the interests of the proposed class.

4

Defendants respond that the Fund has not satisfied the typicality requirement because Defendants have unique defenses to the Fund's claims. For example, Defendants aver that the Fund will not be able to invoke the presumption of "fraud-on-the-market" reliance while other investors could.

It is undisputed that proof of reliance is a part of the Plaintiffs' burden in this case. *See Castillo*, 206 F.R.D. at 468. Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury. *Id*. Generally, in class action securities fraud cases, plaintiffs have to rely upon the "fraud-on-the-market" doctrine in proving reliance. When a plaintiff alleges that a defendant made material misrepresentations or omissions concerning a security that is actively traded on an efficient market, thus establishing a fraud on the market, a rebuttable presumption of reliance arises. *Id*.[1]

The fraud-on-the-market theory is key to the class certification issue because, without the benefit of the presumption of reliance, requiring proof of individualized reliance from each member of the proposed plaintiff class effectively would prevent Plaintiffs from proceeding with a class action, since individual issues then would overwhelm the common ones. Bovee v. Coopers & Lybrand, 216 F.R.D. 596, 603 (S.D. Ohio 2003).

The presumption of reliance may be rebutted if a purchaser of stock relies on non-market information that is not generally available to the public and, therefore, not available to the unnamed class members. *Shiring v. Tier Technologies, Inc.*, 244 F.R.D. 307, 313 (E.D. Va. 2007). Where a

---

[1] The fraud-on-the-market theory rests on the assumption that in an open and developed market, dissemination of material misrepresentations or withholding of material information typically affects the price of the stock, and purchasers generally rely on the price of the stock as reflective of its value. *Castillo*, 206 F.R.D. at 468.

5

plaintiff relies on the fraud-on-the-market presumption to establish typicality, any reliance on non-market information means that the plaintiff cannot be said to have relied on the integrity of the market and, therefore, that plaintiff is atypical of those who have so relied. *Id*.

An initial issue here is the extent to which the Court can delve into the merits of the fraud-on-the-market theory when considering a motion for class certification. A preliminary determination as to the *availability* or *applicability* of the presumption, which is distinct from its actual application, can be made at the class certification stage without dealing with the merits of the case. Castillo, 206 F.R.D. at 471. Courts recognize a special need for factual scrutiny when a putative class seeks to rely on the fraud-on-the-market theory and may require plaintiffs to make at least a facial showing that the theory will be available to them. Bovee, 216 F.R.D. at 606.

Thus, the Court must walk a "fine line," as noted by the court in Castillo, of avoiding a finding on the merits while reviewing the availability of the presumption prior to certifying a class. See Castillo, 206 F.R.D. at 472-73; Bovee, 216 F.R.D. at 606. The Court will limit its inquiry to a preliminary determination of whether the Fund would be subject to unique defenses, not whether such defenses will ultimately be successful.

The Fund did not make the decision to purchase the Company stock. Its investment manager, Baron Capital Management, Inc. did. The Fund's Chairperson testified that Baron had discretionary authority to buy and sell stock without first consulting with the Fund. The person at Baron who was directly responsible for recommending the purchase of the Company stock was Neil Kaufman.

The fact that the Fund relied upon a broker or investment manager, so long as the investment manager relied upon public information, is, without more, insufficient to find the Fund to be

6

atypical.  *In re Direct General Corp. Securities Litigation*, 2006 WL 2265472 at * 3 (M.D. Tenn. Aug. 8, 2006) (citing *In re Vicuron Pharmaceuticals, Inc. Securities Litigation*, 233 F.R.D. 421, 427 (E.D. Pa. 2006)).  However, the presence of even an arguable defense peculiar to the named plaintiff may destroy the required typicality as well as bring into question the adequacy of the named plaintiff's representation because such a defense can distract the named plaintiff to such an extent that its representation of the interests of the rest of the class will suffer.  *O'Neil v. Appel*, 165 F.R.D. 479, 492 (W.D. Mich. 1996)*; Zandman v. Joseph*, 102 F.R.D. 924, 930 (N.D. Ind. 1984); *Ballan v. Upjohn Co.*, 159 F.R.D. 473, 480 (W.D. Mich. 1994).

Whether the defense will be successful is of no matter.  If the Lead Plaintiff would be required to devote considerable time to rebut the claim that its purchases were based not on the integrity of the market, but on non-public information that it received, then the situation would prejudice absent class members.   *In re Independent Energy Holdings PLC Securities Litigation*, 210 F.R.D. 476, 481 (S.D. N.Y. 2002) (citing *Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D. 474, 476 (S.D. N.Y. 1989)).

In *O'Neil*, one of the proposed lead plaintiffs was a paid consultant for the company, hired to help with strategic planning, who met in private with corporate officers and reviewed corporate documents.  The court found that he was not a typical investor.  The court found it unnecessary to determine with finality, on the class certification motion, that he in fact relied upon non-public information in making his stock purchases and stated: "To negate the typicality of a representative's claim, it is only necessary that the defense be unique, arguable and likely to usurp a significant portion of the litigant's time and energy."  *O'Neil,* 165 F.R.D. at 492-93.

In *Zandman*, the named plaintiff had held conversations with company officials, attended shareholder meetings, and attended a special meeting for securities analysts. He admitted to direct reliance upon personal telephone conversations and meetings. The court found that he was subject to the colorable defense of non-reliance and, therefore, not typical. The parties disputed whether the oral representations made to Mr. Zandman were similar to the publicly disseminated information, but the court stated: "For purposes of certification of a class, however, no final determination on the merits of this issue need be made at this time. A preliminary finding that a proposed representative is subject to a unique defense is sufficient." *Zandman*, 102 F.R.D. at 931.

The court in *Shirling* noted that there were difficult factual questions concerning the defense which could not be resolved at the class certification stage.[2] "However, whether these defenses will be successful is of no matter. The fact that plaintiffs will be subject to such defenses renders their claims atypical of other class members." *Id*. Summing up, the *Shirling* court stated that personal contact with corporate officers and special meetings at the company will render a plaintiff atypical to represent the class, even where factual questions exist as to whether the plaintiff obtained inside information as a result of the personal contact. *Id*.[3]

---

[2] For example, there were factual disputes as to whether the information to which the named plaintiff had access would be relevant to a decision to purchase and whether the named plaintiffs actually relied on the information in their decisions to purchase. *Shirling*, 244 F.R.D. at 314.

[3] In *Direct General*, this Court considered the availability or applicability of the fraud-on-the-market presumption and determined that the plaintiffs had established, for purposes of class certification, that the presumption would be available. *In re Direct General Corp.*, 2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006). There was no allegation in *Direct General*, however, of specific contact by the named plaintiffs with corporate officers. In other words, the Defendants' challenge had to do with whether individual determinations of reliance would be required, not whether the named plaintiffs were subject to unique defenses.

8

One court has held: "It is beyond reality to suggest that any potential shareholder could meet with corporate officers to discuss information that was already available to the public. Personal contact with corporate officers and special meetings at the company will render a plaintiff atypical to represent the class." *Grace v. Perception Technology Corp.*, 128 F.R.D. 165, 169 (D. Mass. 1989). [4]

Here, the record reflects that Mr. Kaufman met with officers of the Company, not simply while on a "field trip" with other financial analysts, but individually. Mr. Kaufman conducted his own investigation, including talking with the Company's customers. Defendants assert that Mr. Kaufman had a copy, in his file, of the statute creating the Pilot Program at issue herein and understood the parameters and limitations on that program. Defendants also maintain that Mr. Kaufman independently investigated the Company's ability to deliver cost savings.

What Mr. Kaufman knew and did not know is disputed, so the Fund would be required to litigate those issues. What Mr. Kaufman understood about the Company, the Pilot Program, and the Company's ability to deliver cost savings is disputed, so the Fund would be required to litigate those issues. The Defendants would be entitled to examine and question witnesses concerning Mr. Kaufman's e-mails, documents and other statements in order to fully litigate these disputed facts.

---

[4] Courts have found a disqualifying unique defense where the named plaintiff had a direct or personal relationship with a board member or officer of the issuing company. *Independent Energy Holdings*, 210 F.R.D. at 481; *Shiring*, 244 F.R.D. at 314. A court also found that a named plaintiff's claims were subject to a unique defense and thus atypical where he had had a face-to-face meeting with a senior officer of the company, even though the plaintiff argued the defendant did not provide him with "inside information." *Id*. (citing *Beck v. Status Game Corp.*, 1995 WL 422067 at * 3 (S.D. N.Y. 1995)).

Just the fact that the attorneys have already had to spend time, effort and money to examine and question all these matters, which are unique to the Fund, is evidence that the Fund is not typical.

As noted above, the presence of even an arguable defense peculiar to a Lead Plaintiff may destroy the required typicality as well as bring into question the adequacy of that Lead Plaintiff's representation because such a defense can distract the Lead Plaintiff to such an extent that its representation of the interests of the rest of the class will suffer. Resolving all these issues concerning Mr. Kaufman would distract the Fund from matters common to all the class members.

Furthermore, the Defendants will undoubtedly attempt to rely on alleged admissions made by Mr. Kaufman, admissions which could be attributable to the entire class. Such admissions create defenses which distinguish the Fund from other class members, making it atypical, regardless of whether those admissions are ultimately upheld. Simply having to litigate the admissibility and preclusive effect of alleged admissions would distract the Fund from matters common to all the class members. Moreover, being held to those admissions could interfere with the Fund's ability to adequately protect the interests of the class.

Defendants also argue that Mr. Kaufman's view of the Company and of disease management was counter to the Plaintiffs' theories and the Plaintiffs' analysts' opinions, causing potential conflict with other class members. Having to litigate these issues further evidences the fact that the Fund is atypical, that it would be distracted by collateral, unique issues with regard to this litigation, and that it is not in a position to adequately protect the interests of the class.

Finally, Defendants have raised an issue of the Fund's waiver of the attorney-client privilege. Without deciding that particular issue, the Court notes that having to litigate the issue of whether the Fund waived its attorney-client privilege and, if so, the effect of that waiver as to other class

10

Case 3:08-cv-00569   Document 136   Filed 10/05/2009   Page 10 of 11

members clearly distinguishes the Fund from other class members, making it atypical and inadequate, and would further distract the Fund from representing the interests of the class.

The Court finds that, given the unique circumstances related to the Fund and the unique defenses to which it would be subject, the Fund would be required to devote considerable time to rebut those unique claims and the situation would prejudice absent class members. The fact that the Fund would be subject to such defenses renders its claims atypical and its ability to protect the interests of the class inadequate.

For all these reasons, the Court finds that the Fund has not carried its burden of establishing typicality and adequacy, which are required for a class to be certified under Fed. R . Civ. P. 23. Accordingly, the pending Motion is DENIED.

Having denied the motion for class certification, the Court need not reach the other issue concerning the duration of the alleged class period.

IT IS SO ORDERED.

*Todd Campbell*
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE