UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN RICHARD BEACH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEALTHWAYS, INC., et al.,<br><br>Defendants. | Civil Action No. 3:08-cv-00569<br>**(Consolidated)**<br><br>CLASS ACTION<br><br>Judge Todd J. Campbell<br>Magistrate Judge Juliet Griffin |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO CENTRAL LABORERS' PENSION FUND'S MOTION TO INTERVENE**

Wallace W. Dietz
Brian D. Roark
BASS, BERRY & SIMS, PLC
Suite 2700
315 Deaderick Street
Nashville, TN 37238
(615) 742-6200


John L. Latham
Susan E. Hurd
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, GA 30309-3424
(404) 881-7000

*Attorneys for Defendants*

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | STATEMENT OF FACTS | 2 |
| III. | ARGUMENT | 5 |
|  | A. CLPF's Motion To Intervene As-of-Right Pursuant To Federal Rule 24(a)(2) Should Be Denied | 5 |
|  | 1. CLPF Has Failed To Demonstrate That Its Interest In The Case Is Being Inadequately Represented | 5 |
|  | 2. CLPF's Motion To Intervene Is Not Timely. | 6 |
|  | 3. CLPF's Motion Was Filed Five Months After The Deadline To Add New Parties. | 8 |
|  | 4. Defendants Will Be Prejudiced By CLPF's Failure To Intervene Promptly. | 9 |
|  | 5. CLPF's Interest In The Case Is Purely Economic And Provides An Insufficient Basis For Intervention. | 11 |
|  | B. CLPF's Motion Seeking Permissive Intervention Pursuant To Federal Rule 24(b)(1)(B) Should Be Denied | 12 |
|  | C. If CLPF's Motion Is Granted, Defendants Should Be Awarded The Costs Incurred In Investigating And Successfully Opposing The Prior Class Certification Motion | 13 |
| III. | CONCLUSION | 14 |

## I. INTRODUCTION

Defendants Thomas G. Cigarran, Ben R. Leedle, Jr., Mary A. Chaput, Mary Hunter, Matthew Kelliher, Donald Taylor, and Healthways, Inc. (collectively "Defendants") hereby submit this Memorandum of Law in Opposition to the Motion to Intervene filed by putative plaintiff Central Laborers' Pension Fund ("CLPF").

Defendants oppose CLPF's motion to intervene on the grounds that CLPF has failed to show as required that its interests are not being adequately represented by the existing parties to this litigation. Although the present motion is purportedly based on the failure of Lead Plaintiff West Palm Beach Firefighters' Pension Fund ("the Fund") to qualify as a proper class representative, CLPF overlooks the fact that there are two other plaintiffs already participating in this case – Plaintiffs John Richard Beach and Donald Lloyd. CLPF fails to even mention these individuals and, thus, does not and cannot explain why these other putative investors are insufficient to protect CLPF's interests or those of the other proposed class members. Moreover, it is necessary here to look to other plaintiffs already participating in the litigation because the deadline set by the Court for moving to amend to add new parties was May 25, 2009 – almost five months before CLPF first sought to intervene.

CLPF's motion is also due to be denied on the grounds that the requested intervention is untimely given the significant progress of the instant action and CLPF's corresponding failure to take any prior steps to participate in this case in any respect. Indeed, CLPF declined to act for several months even after it became clear that the Fund would have great difficulty establishing that it was an adequate and typical class representative for the proposed class. As a result, Defendants and the Court were forced to expend significant time, effort, and resources on class certification issues only to be asked by CLPF to repeat this entire process now that it belatedly wishes to join the proceedings.

Further, CLPF's only stated interest in this case is purely an economic one, which is an insufficient basis standing alone upon which to grant intervention, and clearly failed to motivate CLPF to seek out a role for itself any earlier. Also, contrary to relevant case law, CLPF asks this Court to simply assume that it shares questions of law or fact in common with the proposed class rather than demonstrating that this is in fact the case. And finally, CLPF's motion must be denied because it is without a doubt that Defendants will be substantially prejudiced if CLPF is allowed to intervene. Should this occur, Defendants will be required to incur *for the second time* significant fees and expenses associated with investigating and re-litigating the suitability of yet another "new" proposed representative. Plaintiff Beach, on the other hand, has already participated in Defendants' prior class certification discovery efforts and, thus, would not present the same level of duplication.

If the Court is, however, inclined to grant CLPF's motion, Defendants respectfully request that CLPF be ordered to reimburse Defendants for those costs they incurred with respect to the Fund's prior failed attempt to represent the proposed class. Defendants should not have to incur duplicative costs related to class certification due to CLPF's failure to seek participation in this case at an earlier point in time.

## II. STATEMENT OF FACTS

The present lawsuit was initiated on June 5, 2008, when Plaintiff Richard Beach filed a complaint against Defendants for alleged violations of the federal securities laws. (Docket #1.) Plaintiff Donald Lloyd filed a similar complaint on July 8, 2008.[1] As required under the Private Securities Litigation Reform Act ("Reform Act"), counsel for Plaintiff Beach and other firms disseminated several public notices of the filing of the suit and described the claims asserted.[2] After the sixty days allotted under the Reform Act for other investors to come forward to participate in the

---

[1] Two proposed class actions were filed against Healthways with respect to the conduct at issue in this matter. *See Beach v. Healthways, Inc.,* No. 3:08-cv-00569 (M.D. Tenn.); *Lloyd v. Healthways, Inc.,* No. 3:08-cv-00666 (M.D. Tenn.). These cases were consolidated pursuant to the Court's Order entered on August 8, 2008, appointing the Fund as Lead Plaintiff. (Docket # 34)

[2] *See* Exhibit A to Aff. of Ramzi Abadou in Supp. of the Fund's Mot. to Consolidate Related Actions, Appoint Lead Pl., and Approve Lead Pl.'s Selection of Lead and Liaison Counsel. (Docket #33).

2

case, the Fund filed a motion to be appointed "Lead Plaintiff," which was granted four days later due to the fact that no other entity (including CLPF) sought appointment as Lead Plaintiff. (Docket #31, 34.) The Fund then filed its Consolidated Class Action Complaint (the "Complaint") on September 22, 2008 (Docket #56), and the Court entered a scheduling Order on March 25, 2009 which, among other things, set a deadline of May 25, 2009 for any motions seeking to add parties to this matter (Docket #82).

On June 15, 2009, the time-consuming and costly battle regarding class certification began when the Fund filed its Motion for Class Certification and asked to be designated the sole representative for the proposed class. (Docket #93.) Defendants at that point had already served class certification related interrogatories and document requests on the Fund and Plaintiff Beach.[3] The Fund and Plaintiff Beach responded to this discovery on July 8, 2009, and the parties thereafter engaged in series of negotiations as to the sufficiency of these responses and the stated objections to these requests. Dorritt Miller, the Chairperson of the Fund, was deposed on July 21, 2009.

In addition to taking discovery of the proposed class representative, Defendants also subpoenaed several relevant third-parties,[4] including Baron Capital Management, Inc. ("Baron"), the investment manager for the Fund, who had discretionary authority to make investment decisions on the Fund's behalf and did in fact make the actual decision to purchase the Healthways stock on which the Fund's claims are based. Defendants received documents from Baron in response to their subpoena on July 17, 2009, and a supplemental production occurred on July 30, 2009, both of which were forwarded to the Fund's counsel the same day. Defendants deposed Baron's representative, Neal Kaufman, on July 31, 2009.

---

[3] Defendant Healthways served its First Set of Interrogatories to the Fund and Plaintiff Beach regarding Class Certification and its First Request for Production of Documents to the Fund and Plaintiff Beach regarding Class Certification on June 5, 2009.

[4] Defendants also subpoenaed documents from the putative expert tendered by the Fund on class certification issues, Professor Steven Feinstein, who was deposed on July 28, 2009. Defendants issued additional subpoenas to Bogdahn Group on July 9, 2009, Thompson, Siegel & Walmsley LLC on July 10, 2009, and Perry & Jensen LLC on July 15, 2009.

3

On September 4, 2009, Defendants filed their Opposition to the Fund's Motion for Class Certification. (Docket #124.) The Opposition Memorandum explained that class certification should be denied in this case for several reasons, including the fact that discovery had revealed serious deficiencies in the Fund's ability to serve as a class representative. Specifically, Defendants' Memorandum demonstrated that the Fund was subject to unique defenses that destroyed typicality and adequacy based on Baron's contact with Company officers, Baron's independent investigation into Healthways prior to purchasing the stock for the Fund, and the fact that Baron was aware of the allegedly undisclosed information upon which the Complaint was based. (Docket #124 at 5-18.) Defendants further showed that the Fund was not an adequate or typical representative because it had arguably waived the attorney-client privilege through open meetings and postings on the Internet of privileged communications related to the present suit. (*Id.; see also* October 5, 2009, Docket #136 at 10-11.)

On October 5, 2009, the Court issued its Order denying class certification, concluding that the Fund had failed to carry its burden of establishing typicality and adequacy based on the above-referenced deficiencies. (Docket #136.) The entire process of investigating and briefing the Fund's suitability to serve in a representative capacity was very time-consuming and expensive for Defendants. Defendants incurred over $285,000 in fees and expenses associated with discovery, briefing, and oral argument concerning the Fund's failed motion for class certification.[5]

---

[5] *See* Declaration of Susan Hurd dated November 4, 2009, attached hereto as Exhibit A ("Hurd Decl.").

### III. ARGUMENT

#### A. CLPF's Motion To Intervene As-of-Right Pursuant To Federal Rule 24(a)(2) Should Be Denied.

##### 1. CLPF Has Failed To Demonstrate That Its Interests In The Case Are Being Inadequately Represented.

For purposes the present motion to intervene under Rule 24(a)(2), CLPF must demonstrate that its interests in this case are being not adequately represented by other parties to the instant action. *See, e.g., Jordan v. Mich. Conference of Teamsters Welfare Fund*, 207 F.3d 854, 862 (6th Cir. 2000); *see also Bradley v. Milliken*, 828 F.2d 1186, 1192 (6th Cir. 1987).

> While this burden is minimal … this Court has held that a movant fails to meet his burden of demonstrating inadequate representation when 1) no collusion is shown between the existing party and the opposition; 2) the existing party does not have any interests adverse to the intervener; and 3) the existing party has not failed in the fulfillment of its duty.

*Jordan*, 207 F.3d at 863; *see also Bradley*, 828 F.2d at 1192.

CLPF's arguments as to the inadequacy of the current representation focus exclusively on the Fund's failure to be appointed as a class representative. (*See* Pl.'s Mot. 8-9.) CLPF ignores the fact that, as noted above, at least two other plaintiffs have previously filed complaints and are still parties to this consolidated action – John Richard Beach and Donald Lloyd. No explaination is provided as to why either gentleman cannot represent CLPF's claims or those of the proposed class. This omission is particularly glaring as to Plaintiff Beach, who is represented by the same counsel as CLPF, and who has already shown a willingness to participate in this case by filing his own complaint, responding to written discovery requests, and producing transactional records several months ago in response to Defendants' discovery requests. Thus, in the absence of any showing by CLPF that Plaintiff Beach (and Plaintiff Lloyd) have any interests that are adverse to CLPF, have fallen short on legal duties undertaken by them, and/or are colluding with Defendants, CLPF has not shown that it lacks adequate representation from the current parties to this litigation. Its motion to intervene must be denied for this reason alone.

### 2. *CLPF's Motion To Intervene Is Not Timely.*

CLPF argues that its motion is timely largely due to the fact that it filed the instant motion to intervene within fifteen days of the Court's denial of the Fund's motion for class certification. (*See* Pl.'s Mot. at 6.) CLPF, however, concedes as it must that a number of factors must be considered in determining whether a motion to intervene is timely, including:

> (1) the point to which the suit has progressed; (2) the purpose for which the intervention is sought; (3) the length of time preceding the application during which the proposed intervenor knew or reasonably should have known of his interest in the case; (4) prejudice to the original parties due to the proposed intervenor's failure, after he or she knew or reasonably should have known of his or her interest in the case, to apply promptly for intervention; and (5) the existence of unusual circumstances militating against or in favor of intervention.

(*See id.* at 5.)

With respect to the Court's consideration of the first factor -- *i.e.*, the point to which the suit has progressed -- the Sixth Circuit has expressly ruled that

> the time of intervention is not the determining factor but rather that ***all circumstances must be examined*** to determine the substantive progress that has occurred in the litigation. If the litigation has made extensive progress in the district court before the appellants moved to intervene then this factor weighs against intervention.

*U.S. v. Tennessee*, 260 F.3d 587, 592 (6th Cir. 2001) (emphasis added) (internal citations and quotations omitted); *see also Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000) ("The absolute measure of time between the filing of the complaint and the motion to intervene is one of the least important of these circumstances. A more critical factor is what steps occurred along the litigation continuum *during* this period of time.") (internal citation omitted).

Here, the litigation has progressed significantly with the parties spending the last seven months actively engaged in extensive discovery efforts on both factual and class representative issues. Defendants have, for example, produced nearly 1.7 million pages of documents to date in this case. The parties have also engaged in substantive motion practice, the Court has rendered a decision as to the viability of the instant action as a class action, and still other matters are pending

6

related to the current scope of discovery in this case. Under the current case schedule, fact discovery is due to be complete as of March 31, 2010, dispositive motions are due on or before July 10, 2010, and a trial is set to begin on November 30, 2010.[6] The significant progress to date in the case is, thus, a factor that weighs against CLPF's motion to intervene.

The third factor that the Court must consider -- *i.e.*, the length of time preceding CLPF's application during which CLPF knew or reasonably should have known of its interest in the case – similarly counts against intervention. CLPF knew or should have known of the existence of this lawsuit as early as June 2008 when several plaintiffs' firms issued press releases announcing the filing of the suit as required under the Reform Act.[7] CLPF is also represented by the same counsel as Plaintiff Richard Beach and the Fund (*see* Pl.'s Mot. at 6) and, thus, presumably has known of the instant lawsuit for some time now through its counsel. In addition, through this common representation, CLPF was on notice for several months prior to the Court's October 5 ruling of the significant problems the Fund faced in attempting to serve as the sole class representative. The issues that ultimately proved to be fatal to the Fund were discussed in detail in the documents produced by the Fund and Baron in July and during the depositions of the Fund's and Baron's representatives which also occurred later that month.

Significantly, "[a]n entity [like CLPF] that is aware that its interests may be impaired by the outcome of the litigation is obligated to seek intervention as soon as it is reasonably apparent that it is entitled to intervene." *U.S. v. Tennessee*, 260 F.3d at 594; *see also May v. Nat'l Bank of Commerce*, 230 F.R.D. 505, 507 (W.D. Tenn. 2005) (same). In *In re Boston Scientific Corp. Erisa Litigation*, the proposed intervenor moved to intervene five weeks after "he first learned that 'his re-entry into the case might be necessary to protect the class,' which [the intervening plaintiff] claims

---

[6] CLPF has represented that it will not seek an extension of any of these established deadlines. (*See* Pl.'s Mot. 6.)

[7] Even prior to the filing of the first complaint, certain firms issued press releases on February 28 and May 6, 2008 announcing an "investigation" into the Company's revision to its guidance for Fiscal Year 2008. (*See* Exhibit B.)

7

to have discovered when Defendants questioned [the proposed class representatives'] standing in their opposition to class certification." 254 F.R.D. 24, 34 (D. Mass. 2008). As the *Boston Scientific* court noted, however, "timeliness turns on when the applicant first learned that he had any interest in the case, not when the applicant decides he might be needed." *Id.* Thus, "[a] class member who is aware of a class action affecting his interests 'act[s] at his peril in not seeking to become a lead plaintiff and class representative.'" *Id.* (citation omitted).

Because the proposed intervenor "knew of his interests in this case for approximately two and a half years before moving to intervene, [and] not the five weeks since it occurred to him that certification might be denied," the motion was deemed untimely. *Id.*; *see also Clark v. State Farm Mut. Auto. Ins. Co.*, No. 00-cv-01841-LTB-PAC, 2007 WL 1850996, at *3 (D. Colo. June 25, 2007) (distinguishing *In re Bridgestone Securities* cited by CLPF and holding that motion to intervene was untimely, notwithstanding ruling addressing class representative's suitability, where same law firm represented original class representative and proposed intervenor had notice several months prior to filing motion that original class representative's interest diverged from that of intervenor). The same result should occur here as CLPF has known for at least several months, if not more than a year, of its interest in this case.

### 3. *CLPF's Motion Was Filed Five Months After The Deadline To Add New Parties.*

CLPF's motion is also untimely because the scheduling order in this case required the parties to file any amendment seeking to add additional parties by May 25, 2009. (*See* Order, Docket #82.) The Court established this particular deadline in light of the demanding overall case schedule and in a desire to avoid any prejudice to existing parties that might rise from belated attempts to add new parties. Indeed, the present attempt by CLPF to intervene in this case only serves to illustrate why such a provision was necessary.

8

Here, CLPF requests to join these proceedings over a year into the case and seeks as its first order of business the re-litigation of issues that have already been the subject of full discovery and briefing by the existing parties. As discussed below, the need for Defendants to investigate and brief the circumstances of yet another new proposed class representative will greatly increase their costs of litigating this case and potentially interfere with other case activities important to the defense of these claims.

### 4. *Defendants Will Be Prejudiced By CLPF's Failure To Intervene Promptly.*

For obvious reasons, CLPF's motion fails to acknowledge the extensive amount of time, resources and effort that the parties and the Court have already directed towards investigating and analyzing the facts and circumstances surrounding the first motion for class certification. Defendants have already incurred in this case over $285,000.00 in legal fees and related expenses associated with discovery, negotiations with class counsel and third-parties, depositions, legal research, and briefing on class certification issues. (*See* Ex. A, Hurd Decl. ¶¶4 and 5.)

If CLPF's motion to intervene is granted, Defendants will be further prejudiced as they will be required to undertake – once again – extensive (and expensive) discovery and related negotiations with opposing counsel and third-parties as to CLPF's suitability as a potential class representative and to prepare new submissions to the Court on these and other issues relevant to class certification.[8] It was clear from discovery that the Fund had failed to do even the slightest investigation into whether it would be an adequate class representative and, in particular, had neglected to even contact its investment manager, Baron, who made the actual decision to purchase Healthways stock and, worst still, failed to review Baron's files or to discuss the Complaint allegations with Baron. Now, having failed the first time, the Fund and CLPF seek to put Defendants through the same costly drill again.

---

[8] At this point, Defendants have no reason to think that costs of litigating these issues with respect to a new participant in this case will be less than those incurred with respect to the Fund.

9

The substantial prejudice to Defendants caused directly by CLPF's failure to intervene earlier in the case counsels against its present request to intervene. *See, e.g., Stupak-Thrall*, 226 F.3d at 478; *see also Nat'l Bank of Commerce*, 230 F.R.D. at 508 (assertion by opposing party that "they ha[d] already been forced to incur great expense in prosecuting the case at bar [and that] [i]f the Motion to Intervene were granted, [they] would be prejudiced by, among other factors, the incurrence of additional fees to [their] detriment" was "well taken" and weighed against finding that the motion to intervene was timely) (internal quotations omitted); *Boston Scientific*, 254 F.R.D. at 34 (argument that defendants would suffer minimal prejudice because intervention would require defendants to take one deposition "misses [] the significant expenses already incurred by Defendants in preparing their opposition to Plaintiffs' motion to certify, including retention of an expert").

In contrast, however, CLPF will not be prejudiced if the motion to intervene is denied. As the *Boston Scientific* court explained, "a class member's interests in a class action suit are not left unprotected if certification is denied, because he can still file a class action on his own behalf or on behalf of a class." *Id.* at 34. Moreover, although "[p]laintiffs' counsel have undoubtedly incurred significant expenses in this litigation, which will be lost if certification is denied … prejudice to counsel is not a cognizable Rule 23 concern." *Id.* (internal quotations omitted). Because CLPF (or any other member of the proposed class) is free to file another action either as a putative class action or an individual action, any harm or prejudice to CLPF and/or the class that might result from denying the motion to intervene does not outweigh the prejudice that Defendants would undoubtedly suffer if the motion were granted. *See id.* at 34-35.

In sum, CLPF's delay in taking any action to intervene – coupled with the significant prejudice to Defendants derived from CLPF's failure to do so and the current progress of the lawsuit – all militate against a finding that CLPF's motion to intervene was timely filed. *See, e.g., Creusere v. Bd. of Educ. of City School Dist. of City of Cincinnati*, 88 F. App'x 813, 825 (6th Cir.

10
Case 3:08-cv-00569 Document 163 Filed 11/04/2009 Page 12 of 18

2003) (district court properly concluded that, although intervenor's interest was heightened because of court's ruling, its interest was not new, movant could have intervened as soon as this case was filed but did not, and thus motion to intervene was too late); *In re Safeguard Scientifics*, 220 F.R.D. 43, 49 (E.D. Pa. 2004) (denying motion for intervention as of right and by permission where, among other things, motion "would essentially require reopening the matter to additional class discovery and the filing of a second class certification motion thus inflicting potentially significant additional delays, costs and expenses on the existing parties"); *In re One Meridian Plaza Fire Litig.*, No. Civ. A. 91-2171, 1993 WL 230008, at *2 (E.D. Pa. June 25, 1993) (motion to intervene was untimely and denied where, among other things, briefing of class certification motion was complete and the motion was pending); *compare Usery v. Brandel*, 87 F.R.D. 670, 675 (W.D. Mich. 1980) (intervention as of right was allowed where ten months had passed between the filing of the complaint and the motion to intervene, but the suit had "not advanced beyond early discovery").

### 5. *CLPF's Interest In The Case Is Purely Economic And Provides An Insufficient Basis For Intervention.*

CLPF acknowledges that it must have a direct and substantial interest in the instant action in order to qualify for intervention as of right pursuant to Rule 24(a)(2). (*See* Pl.'s Mot. at 6.) "Whether an applicant for intervention demonstrates sufficient interest in an action is a practical, threshold inquiry." *Greene v. U.S.*, 996 F.2d 973, 976 (9th Cir. 1993). "No specific legal or equitable interest need be established." *Id.* (citing *Portland Audubon Soc'y v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989). Nevertheless, a party seeking intervention "must demonstrate a 'significantly protectable interest.' An economic stake in the outcome of the litigation, **even if significant**, is not enough." *Id.* (emphasis added) (internal citation omitted); *see also Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC*, 485 F.3d 1006, 1008 (8th Cir. 2007) ("An economic interest in the outcome of the litigation is not itself sufficient to warrant mandatory intervention."); *U.S. v. Tennessee*, 260 F.3d at 595 (proposed intervenor's economic interest in assuring adequate funding for implementation of

settlement agreements and its contractual rights did not reach level of requisite substantial interest required to intervene).

CLPF has identified as its only interest in the present case the losses it purportedly suffered when Healthways shares purchased during the proposed class period declined in value. (*See* Pl.'s Mot. at 7-8.) As noted above, the existence of an economic interest in the outcome of the litigation (the same shared by all potential class members) is not sufficient standing alone. Moreover, this same putative interest existed long before the present suit was filed or class certification denied, but apparently failed to present a sufficiently compelling motivation for CLPF to come forward any earlier. These same interests could easily be advanced through the filing of a separate action and, thus, intervention is not necessary here to protect any efforts by CLPF to recover for its individual losses. And it is important to note again that, to date, CLPF has taken no steps whatsoever to pursue any damages claims allegedly associated with its decision to purchase Healthways securities.

### B. CLPF's Motion Seeking Permissive Intervention Pursuant To Federal Rule 24(b)(1)(B) Should Be Denied.

As CLPF concedes, a party may be permitted to intervene pursuant to Rule 24(b) when the motion is timely and it will not unduly delay or prejudice adjudication of the original parties' rights. (*See* Pl.'s Mot. at 9.) As discussed in great detail above, CLPF's motion is not timely and would result in significant prejudice to Defendants if granted. Accordingly, Defendants respectfully submit that the Court should exercise its discretion and deny CLPF's motion to intervene for these reasons alone.

Moreover, CLPF has also failed to demonstrate as required for permissive intervention that its claims raise common questions of law and fact with the proposed class. CLPF argues that it has adopted the Fund's Complaint in its entirety and concludes that its claims "are identical to those brought by Lead Plaintiff West Beach Firefighters[,]" but without any discovery as to CLPF or its purported purchases or sales of Healthways stock there is no basis on which this Court may

12
Case 3:08-cv-00569  Document 163  Filed 11/04/2009  Page 14 of 18

conclude that the requisite commonality exists. (Pl.'s Mot. 10.) Indeed, the only materials submitted by CLPF in support of its motion actually demonstrate that its trades in Healthways securities are very different from those of the Fund and are actually inconsistent with the allegations in the Fund's Complaint. CLPF, for example, sold a number of its Healthways shares after the January 7, 2008 announcement of the change in the savings target for the MHS pilot program to budget neutrality, but before the announcement by CMS on January 29, 2008 which the Complaint claims revealed "the truth" about the MHS pilot program. (*See* Decl. of Dan Koeppel in Supp. of [CLPF's] Mot. to Intervene and Mot. for Class Certification, Oct. 9, 2009, at Ex. 1.) CLPF, thus, arguably benefited from the supposed fraud described in the Complaint because it sold a significant portion of its holdings at supposedly inflated prices before "the truth" was revealed. (*See id.*)

For these and other reasons, it cannot be said that CLPF's claims are "identical" to those of the prior proposed representative, and it is equally premature to tout CLPF's supposed lack of unique defenses. (Pl.'s Mot. at 10.) Until CLPF fully and completely responds to discovery requests and is deposed, neither this Court nor Defendants has any practical ability to test any of these assertions of commonality or typicality.

### C. If CLPF's Motion Is Granted, Defendants Should Be Awarded The Costs Incurred In Investigating And Successfully Opposing The Prior Class Certification Motion.

CLPF asserts that no party to this case will be prejudiced by its intervention (*see* Pl.'s Mot. 12-13), but conspicuously absent from that discussion is the critical issue of whether Defendants will suffer any prejudice, which they undoubtedly will as described above. Allowing CLPF to intervene at this point in time will necessarily require Defendants to expend additional time and effort and to incur further expenses to investigate and brief for a second time another new candidate's adequacy or typicality to serve in a representative capacity. Some or all of the costs incurred previously – over $285,000 – could have been avoided if CLPF had come forward earlier in this case. Should the Court be inclined to grant intervention at this stage of the case, Defendants

13

respectfully request that they be reimbursed for the fees incurred with respect to the first motion for class certification. Such a result is necessary to avoid undue prejudice to Defendants, which, as CLPF concedes, is a mandatory requirement for both intervention as a matter of right and permissive intervention.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that CLPF's Motion to Intervene be denied or, in the alternative, that, as a condition to granting the motion, CLPF be ordered to reimburse Defendants for those fees and expenses they incurred in responding to the prior unsuccessful motion for class certification in this case.

Respectfully submitted, this 4th day of November, 2009.

/s/ Wallace W. Dietz

Wallace W. Dietz
Brian D. Roark
BASS, BERRY & SIMS, PLC
Suite 2700
315 Deaderick Street
Nashville, TN 37238
(615) 742-6200


John L. Latham
Susan E. Hurd
ALSTON & BIRD LLP
1201 W. Peachtree Street
Atlanta, Georgia 30309-3424
(404) 881-7000


*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and exact copy of the foregoing has been served upon opposing counsel, via electronic mail, on this the 4th day of November, 2009:

George Edward Barrett
Douglas S. Johnston, Jr.
Timothy L. Miles
BARRETT, JOHNSTON & PARSLEY, LLC
217 Second Avenue North
Nashville, Tennessee 37201
gbarrett@barrettjohnston.com
djohnston@barrettjohnston.com
tmiles@barrettjohnston.com

Paul Kent Bramlett
Robert Preston Bramlett
BRAMLETT LAW OFFICES
P.O. Box 150734
2400 Crestmoor Road
Nashville, TN 37215
PKNASHLAW@aol.com
robert@bramlettlawoffices.com

Samuel H. Rudman
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747
srudman@csgrr.com

Ramzi Abadou
Jennifer Yeu-Jeng Lai
Darren J. Robbins
Scott H. Saham
Jessica Shinnefield
COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP
655 W. Broadway, Suite 1900
San Diego, CA 92101
ramzia@csgrr.com
jlai@csgrr.com
darrenr@csgrr.com
scotts@csgrr.com
jshinnefield@csgrr.com

Jeffrey A. Berens

Robert J. Dyer, III
DYER & BERENS LLP
682 Grant Street
Denver, CO 80203
jeff@dyerberens.com
bob@dyerberens.com

Marshall Dees
Michael I. Fistel, Jr.
Corey D. Holzer
HOLZER, HOLZER & FISTEL, LLC
1117 Perimeter Center West, Suite E-107
Atlanta, GA 30338
mdees@holzerlaw.com
mfistel@holzerlaw.com
cholzer@holzerlaw.com

D. Seamus Kaskela
David M. Promisloff
SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
280 King of Prussia Road
Radnor, PA 19087
skaskela@sbtklaw.com
dpromisloff@sbtklaw.com

Patrick J. O'Hara
CAVANAGH & O'HARA
407 East Adams Street
Springfield, IL 62701
patrick@cavanagh-ohara.com

/s/ Brian D. Roark

2