UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF TENNESSEE

NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN RICHARD BEACH, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 3:08-cv-00569 **(Consolidated)** |
| Plaintiff, | ) ) | CLASS ACTION |
| vs. | ) ) ) | Judge Todd J. Campbell Magistrate Judge Juliet Griffin |
| HEALTHWAYS INC., et al., | ) ) ) | CENTRAL LABORERS' PENSION FUND'S REPLY IN SUPPORT OF MOTION TO INTERVENE |
| Defendants. | ) ) ) | |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     CENTRAL LABORERS IS ENTITLED TO INTERVENE IN THIS ACTION
        AS OF RIGHT IN ORDER TO INSURE THAT ITS SECURITIES FRAUD
        CLAIMS AND THE SECURITIES FRAUD CLAIMS OF ABSENT CLASS
        MEMBERS ARE PURSUED............................................................................2

        A.    Central Laborers' Interests and the Interests of Other Institutional
              Investors Will Not Be Adequately Represented if Central Laborers'
              Motion to Intervene Is Not Granted ........................................................4

        B.    The Ability to File a Separate Action Does Not Adequately Protect
              Central Laborers..........................................................................................6

        C.    Central Laborers' Motion Is Timely ........................................................7

              1.    Central Laborers Timely Moved After the Court Issued an Order
                    Potentially Impacting Its Interests ..............................................7

              2.    The Pretrial Schedule and Ongoing Discovery in No Way Prevent
                    Intervention ..................................................................................9

        D.    Evidence of Defendants' Conduct that Is Alleged to Have Violated the
              Federal Securities Laws Is the Same for Central Laborers and Each of the
              Members of the Class and Thus the Discovery Currently Being Produced
              by Defendants Will Not Be Impacted by the Intervention ...................10

III.    CENTRAL LABORERS' MOTION FOR PERMISSIVE INTERVENTION
        SHOULD BE GRANTED ...............................................................................11

        A.    The Court Has Already Held that Common Issues Exist for All Class
              Members ...................................................................................................12

        B.    Central Laborers Intervention Serves the Interest of Justice ................14

IV.     DEFENDANTS' REQUEST FOR COSTS MUST BE DENIED....................14

        A.    Defendants Have Recently Admitted that Neither Leedle nor Chaput
              Provided Any Material Information to Lead Plaintiff's Investment Advisor
              that Was Not Also Contained in the Company's Public Filings, Thus
              Defendants Are Precluded from Arguing that Lead Plaintiff Is Subject to
              the Unique Defense Raised in Defendant's Opposition to Class
              Certification .............................................................................................15

        B.    Defendants' Request for Costs Is Absurd as Defendants' Opposition to
              Lead Plaintiff's Motion for Class Certification Was Not Filed in Good

Faith as Defendants Had No Basis to Believe that Leedle or Chaput
Communicated Any Material Non-Public Information to Kaufman .....................16

V. CONCLUSION..................................................................................................................17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*,
    772 F.2d 401 (8th Cir. 1985) ...........................................................................10

*Austell v. Smith*,
    634 F. Supp. 326 (W.D.N.C. 1986) ...............................................................12

*Baldwin v. Burger Chef Sys., Inc.*,
    507 F.2d 841 (6th Cir. 1974) ...................................................................14, 15

*Barkman v. Wabash, Inc.*,
    No. 85 C 611, 1988 WL 5039
    (N.D. Ill. Jan. 20, 1988) ................................................................................12

*Birmingham Steel Corp. v. TVA*,
    353 F.3d 1331 (11th Cir. 2003) ...................................................................3, 7

*Bovee v. Coopers & Lybrand*,
    216 F.R.D. 596 (S.D. Ohio 2003) .............................................................12, 13

*Cureton v. NCAA*,
    No. 97-131, 1998 U.S. Dist. LEXIS 20263
    (E.D. Pa. Dec. 18, 1998) ...............................................................................10

*Davis v. Southern Bell Tel. & Tel. Co.*,
    149 F.R.D. 666 (S.D. Fla. 1993) ...................................................................12

*Deposit Guaranty Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) ......................................................................................14

*Deutschman v. Beneficial Corp.*,
    132 F.R.D. 359 (D. Del. 1990) ......................................................................12

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
    149 F.R.D. 55 (S.D.N.Y. 1993) ......................................................................3

*EEOC v. CRST Van Expedited, Inc.*,
    No. C07-0095, 2008 U.S. Dist. LEXIS 75354
    (N.D. Iowa Sept. 26, 2008) ........................................................................9, 10

*EEOC v. Regis Corp.*,
    No. 99 C 8270, 2001 U.S. Dist. LEXIS 11351
    (N.D. Ill. Jan. 17, 2001) .................................................................................6

*Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*,
    657 F.2d 890 (7th Cir. 1981) ............................................................6

*Griggs v. Pace Am. Group, Inc.*,
    170 F.3d 877 (9th Cir. 1999) ..........................................................12

*Grubbs v. Norris*,
    870 F.2d 343 (6th Cir. 1989) .........................................................7, 8

*Grutter v. Bollinger*,
    188 F.3d 394 (6th Cir. 1999) ...........................................................3

*In Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005) ....................................................4

*In re AEP ERISA Litig.*,
    No. 2:03-cv-67, 2009 U.S. Dist. LEXIS 22568
    (S.D. Ohio Mar. 6, 2009) ................................................................3

*In re BellSouth Corp. Sec. Litig.*,
    No. 1:02-cv-2142-WSD, 2006 U.S. Dist. LEXIS 15518
    (N.D. Ga. Apr. 3, 2006) ................................................................13

*In re Boston Scientific Corp. Erisa Litig.*,
    254 F.R.D. 24 (D. Mass. 2008) ........................................................8

*In re Bridgestone Sec. Litig.*,
    430 F. Supp. 2d 728 (M.D. Tenn. 2006) ...................................4, 6, 8

*In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*,
    No. MDL-1446, 2004 WL 405886
    (S.D. Tex. Feb. 25, 2004) .....................................................8, 11, 12

*In re Goodyear Tire & Rubber Co. Sec. Litig.*,
    No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043
    (N.D. Ohio May 12, 2004) ...............................................................5

*In re Lutheran Bhd. Variable Ins. Products Co. Sales Practices Litig.*,
    No. 99-MD-1309 (PAM), 2002 WL 31371945
    (D. Minn. Oct. 7, 2002) .................................................................11

*In re Profit Recovery Group Int'l, Inc. Sec. Litig.*,
    No. 1:00-CV1416-CC, slip op. (N.D. Ga. Dec. 3, 2002) ..................13

*In re Rospatch Sec. Litig.*,
No. 1:90-CV-805, 1991 U.S. Dist. LEXIS 20529
(W.D. Mich. Nov. 13, 1991) ...................................................................................14

*In re Theragenics Corp. Sec. Litig.*,
205 F.R.D. 687 (N.D. Ga. 2002) .............................................................................13

*In re Vicuron Pharms., Inc. Sec. Litig.*,
225 F.R.D. 508 (E.D. Pa. 2004) ................................................................................5

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................13

*Jansen v. Cincinnati*,
904 F.2d 336 (6th Cir. 1990) .................................................................................7, 9

*Kline v. Wolf*,
702 F.2d 400 (2d Cir. 1983) ......................................................................................6

*Lantz v. Am. Honda Motor Co.*,
No. 06 C 5932, 2007 U.S. Dist. LEXIS 76007
(N.D. Ill. Sept. 27, 2007) ...........................................................................................6

*Lopez v. Metro. Gov't*,
No. 3-07-0799, 2008 U.S. Dist. LEXIS 89988
(M.D. Tenn. Nov. 4, 2008) .....................................................................................7, 9

*Lynch v. Baxley*,
651 F.2d 387 (5th Cir. 1981) ................................................................................3, 12

*McCausland v. S'holders Mgmt. Co.*,
52 F.R.D. 521 (S.D.N.Y. 1971) ..............................................................................11

*McKay v. Heyison*,
614 F.2d 899 (3d Cir. 1980)......................................................................................12

*Mich. State AFL-CIO v. Miller*,
103 F.3d 1240 (6th Cir. 1997) ...................................................................................3

*Midwest Realty Mgmt. Co. v. City of Beavercreek*,
93 Fed. Appx. 782 (6th Cir. 2004)..............................................................................8

*Mille Lacs Band of Chippewa Indians v. Minn.*,
989 F.2d 994 (8th Cir. 1993) .................................................................................9, 10

*Ohio Public Employees Ret. Sys. v. Fannie Mae*,
   357 F. Supp. 2d 1027 (S.D. Ohio 2005) ........................................................................4

*Purnell v. City of Akron*,
   925 F.2d 941 (6th Cir. 1997) ........................................................................3

*Robin v. Doctors Officenters Corp.*,
   686 F. Supp. 199 (N.D. Ill. 1988) ........................................................................12

*Ross v. Abercrombie & Fitch Co.*,
   257 F.R.D. 435 (S.D. Ohio 2009) ........................................................................13

*Shields v. Smith*,
   No. C-90-0349 FMS, 1992 U.S. Dist. LEXIS 15718
   (N.D. Cal. Aug. 19, 1992) ........................................................................3

*Sprague v. GMC*,
   133 F.3d 388 (6th Cir. 1998) ........................................................................13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (U.S. 2007) ........................................................................5

*Trief v. Dun & Bradstreet Corp.*,
   144 F.R.D. 193 (S.D.N.Y. 1992) ........................................................................12

*United States ex. rel. Precision Co. v. Koch Indus.*,
   31 F.3d 1015 (10th Cir. 1994) ........................................................................10

*United States v. Marsten Apts.*,
   175 F.R.D. 265 (E.D. Mich. 1997) ........................................................................6

*Westlands Water Dist. v. United States*,
   700 F.2d 561 (9th Cir. 1983) ........................................................................7

*Zicklin v. Breuer*,
   534 F. Supp. 745 (S.D.N.Y. 1982) ........................................................................12

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
   Rule 15(a)........................................................................10
   Rule 20........................................................................10
   Rule 21........................................................................10
   Rule 23........................................................................14
   Rule 23(a)........................................................................11
   Rule 24........................................................................3, 10, 14

Rule 24(a)...............................................................................................3, 7
Rule 24(a)(2)................................................................................................4
Rule 24(b)..................................................................................................12
Rule 36........................................................................................................2
Rule 36(b)..................................................................................................16

## LEGISLATIVE HISTORY

H.R. Conf. Rep. No. 104-369 (1995),
    *reprinted in* 1995 U.S.C.C.A.N. 679 ..............................................5

## SECONDARY AUTHORITIES

5 Alba Conte and Herbert Newberg,
    *Newberg on Class Actions* (4th ed. 2002)
    §16:8 ................................................................................................11, 12
    §16:9 ....................................................................................................11
    §16:11 ....................................................................................................3

Charles A. Wright, Arthur R. Miller and Mary Kay Kane,
    *Federal Practice & Procedure* (2007)
    §1904.....................................................................................................7

# I.    INTRODUCTION

Defendants' arguments are clearly inconsistent.  First, they argue to the Court that discovery should be stayed as it is not clear whether a suitable plaintiff will come forward.  Now that an institutional investor who has suffered significant losses has stepped forward to represent the plaintiff class in this litigation, defendants completely change course and assert that this clearly suitable class representative's motion to intervene should be denied because the existing representation is now – contrary to defendants' prior assertions – apparently adequate.  Defendants' concern for the class is transparent.  They are simply seeking to avoid or delay liability for the fraud they have committed, as their actions during the Class Period caused Healthways' stock price to be artificially inflated and caused economic loss to each of the class members.

Defendants' challenge to intervention completely lacks merit.  First, Central Laborers' Pension Fund ("Central Laborers") has established that absent intervention its interests **may** not be adequately protected, as the only institutional investor involved in this litigation has been found to be an atypical class representative.  Second, Central Laborers' interests are not adequately protected by the two small individual investors, whom defendants would invariably challenge as class representatives, or its ability to file a separate action, as courts have repeatedly rejected these arguments against intervention because they are wholly inconsistent with the Private Securities Litigation Reform Act of 1995 ("PSLRA") and the purpose of a class action.  Third, Central Laborers' Motion to Intervene was timely, as it was filed within 15 days of the event that may have impaired its interests, the Court's October 5, 2009 Memorandum Opinion denying class certification (Docket No. 136).  Fourth, defendants will not be prejudiced by the intervention as the discovery to be produced by defendants is unchanged by the intervention as the issues to be litigated regarding defendants' liability under the federal securities laws have not changed.  Fifth, defendants

completely ignore that this Court has already held that common issues of fact and law exist in this action.

Finally, defendants' request for costs is baseless as Lead Plaintiff filed its Motion for Class Certification in good faith (Docket No. 93). Moreover, defendants' request for costs borders on the absurd as defendants admitted on November 6, 2009 that they did not communicate any material information to Lead Plaintiff's investment advisor that was not also contained in Company press releases and Securities and Exchange Commission ("SEC") filings. Defendants' Responses and Objections to Plaintiffs' Requests for Admissions ("Requests for Admissions Response"), attached hereto as Ex. 1. Thus, defendants are precluded under Fed. R. Civ. P. 36 from arguing that Lead Plaintiff's investment advisor's communications with defendants Leedle and Chaput rebut the fraud on the market presumption of reliance. Furthermore, as a result, the central argument defendants raised in opposition to Lead Plaintiff's Motion for Class Certification lacked a good faith factual basis as it is contradicted by defendants' Requests for Admissions Response that no material information was communicated by company executives to Lead Plaintiff's investment advisor that was not also communicated publicly. Under the circumstances, defendants' request for costs must be denied.

## II. CENTRAL LABORERS IS ENTITLED TO INTERVENE IN THIS ACTION AS OF RIGHT IN ORDER TO INSURE THAT ITS SECURITIES FRAUD CLAIMS AND THE SECURITIES FRAUD CLAIMS OF ABSENT CLASS MEMBERS ARE PURSUED

Central Laborers is an institutional investor that has suffered substantial losses as a result of defendants' conduct that is at issue in this case. Its interests, and the interests of other absent class members, including other institutional investors, will not be adequately represented if Central Laborers' Motion to Intervene is not granted as the Lead Plaintiff's Motion for Class Certification has been denied. Defendants concede that a proposed intervenor's burden in demonstrating that its interests may not be adequately represented "is minimal." Defendants' Opposition to Motion to

Intervene ("Defs' Opp.") (Docket No. 163) at 5. In fact, it is well-established in the Sixth Circuit that "a would-be intervenor must show only that impairment of its substantial legal interest *is possible* if intervention is denied" – a burden the Sixth Circuit labels "minimal." *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1247 (6th Cir. 1997); *see also Purnell v. City of Akron*, 925 F.2d 941, 948 (6th Cir. 1997) (finding language of Rule 24(a) itself only requires a showing that the disposition *may* impair the intervenor's interest); *Grutter v. Bollinger*, 188 F.3d 394, 400 (6th Cir. 1999) ("The proposed intervenors need show only that there is *a potential* for inadequate representation.").

Courts have routinely found that the interest Central Laborers seeks to protect here – insuring adequate class representation – satisfies the requirements of Rule 24 and, under similar circumstances, court's routinely grant intervention. *See* 5 Alba Conte and Herbert Newberg, *Newberg on Class Actions* §16:11 (4th ed. 2002) ("[i]ntervention is liberally allowed after the denial of class status for the protection of absent class members' interests"). In fact, the 11th Circuit Court of Appeals has held that it is an *abuse of discretion* to decertify a "class without permitting class counsel reasonable time to determine whether a new class representative could be substituted." *Birmingham Steel Corp. v. TVA*, 353 F.3d 1331, 1333 (11th Cir. 2003). *See also In re AEP ERISA Litig.*, No. 2:03-cv-67, 2009 U.S. Dist. LEXIS 22568, at *16 (S.D. Ohio Mar. 6, 2009) ("when there is an inadequate class representative but not a definitive determination of the inappropriateness of class certification, intervention is permissible"); *Shields v. Smith*, No. C-90-0349 FMS, 1992 U.S. Dist. LEXIS 15718, at *7-*8 (N.D. Cal. Aug. 19, 1992) (allowing intervenor to serve as class representative when the initial denial of class certification was based solely on the inadequacy of the original putative class representative); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 149 F.R.D. 55 (S.D.N.Y. 1993) (permitting intervention of new representatives to cure adequacy deficiencies of current representatives); *Lynch v. Baxley*, 651 F.2d 387, 388 (5th Cir. 1981) (reversing and

remanding district court order "with instructions to allow time for the intervention of a named plaintiff with standing to represent the interests of the subclass").

A.    **Central Laborers' Interests and the Interests of Other Institutional Investors Will Not Be Adequately Represented if Central Laborers' Motion to Intervene Is Not Granted**

Confronted with the overwhelming authority allowing intervention under these circumstances, defendants assert, without citing any authority, that Central Laborers' interests are adequately protected by the two individual plaintiffs who have filed securities complaints against Healthways. This very argument was recently rejected by this Court. In *In re Bridgestone Sec. Litig.*, Judge Echols granted an institutional investor's "Motion to Intervene as of right under Rule 24(a)(2)" where the sole institutional investor in the case "could no longer represent the interests of . . . other institutional investors" because its claims had been found to be in-actionable. 430 F. Supp. 2d 728, 740 (M.D. Tenn. 2006). In the *Bridgestone* case, just like this case, an individual investor remained as a named plaintiff, however, the court held that the individual investor, "Plaintiff Ziemer does not adequately protect the interests" of institutional investors. *Id.* Accordingly, in this case, just like in *Bridgestone*, because "[n]o other institutional investor is currently a plaintiff party" who could represent the class, Central Laborers is entitled to intervene in this action as of right to protect its interests, as well as the interests of other institutional investors. *Id.*

The Court's opinion in *Bridgestone* is wholly consistent with the PSLRA's penchant for institutional investors representing the class in securities fraud actions such as this one. The PSLRA expressly recognizes that institutional investors are the preferred entities to represent the class in securities fraud class actions. *See In Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 305-06 (S.D. Ohio 2005) (the PSLRA contains an "expressed preference" for institutional investors); *Ohio Public Employees Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1035 (S.D. Ohio 2005) ("The Court also notes that Plaintiffs are institutional investors, which comports with the PSLRA's expressed

preference for such lead plaintiffs."); *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 5:03CV2166, 2004 U.S. Dist. LEXIS 27043, at *18 (N.D. Ohio May 12, 2004) ("The legislative history of the PSLRA reflects a preference for institutional investors in the lead plaintiff role."); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) ("Under the PSLRA, institutional investors are considered preferred lead plaintiffs."). Likewise, the Conference Committee Report states that the PSLRA sought "to increase the likelihood that institutional investors will serve as lead plaintiffs. H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 732-33.[1]

Defendants past conduct in this action demonstrates that Central Laborers interests will not be adequately protected absent intervention as defendants will surely challenge any individual plaintiff's attempt to be certified as a class representative. Indeed, defendants have demonstrated that they will contest any class representative in hopes of defeating class certification, thus, they disingenuously seek to pick a non-institutional investor, who purchased only a small number of shares, as a proposed class representative in hopes of avoiding class certification. The Court should view defendants' motives in seeking to block intervention or to pick the plaintiff whom they will challenge at class certification with skepticism:

> [I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether a putative class should be certified. When it comes, for instance, to determining whether "the

---

[1]     Contrary to defendants' assertion, the interests that Central Laborers seeks to protect are not purely economic. In addition to seeking to recover its significant economic loss, Central Laborers seeks to intervene to protect the interests of absent class members who will be unable to recover their losses if a suitable class representative does not come forward, to protect interests of institutional investors, and to promote the public interest in the enforcement of the federal securities laws, which the United States Supreme Court has recognized as a vital public interest. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (U.S. 2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC).").

representative parties will fairly and adequately protect the interests of the class," . . . it is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.[2]

## B.    The Ability to File a Separate Action Does Not Adequately Protect Central Laborers

Defendants also assert that Central Laborers could adequately protect its interests by filing a separate action seeking damages for defendants' alleged violation of the federal securities laws. Defs' Opp. at 10.  Courts have routinely rejected this argument.  In *Bridgestone*, Judge Echols held that "[a]lthough Defendants contend that IPERS may protect its interests by filing its own individual action, the Court concludes that requiring individual parties to file separate lawsuits while a potential class action is pending would unnecessarily multiply litigation, lead to potentially different results and defeat the purpose of class action lawsuits."  430 F. Supp. 2d at 740.  *See also Lantz v. Am. Honda Motor Co*., No. 06 C 5932, 2007 U.S. Dist. LEXIS 76007, at *16 (N.D. Ill. Sept. 27, 2007) ("[Defendant] is correct that the Intervenors could file individual actions in each of their respective states of residence, but 'requiring individual parties to file separate lawsuits while a potential class action is pending would unnecessarily multiply litigation, lead to potentially different results and defeat the purpose of class action lawsuits.'") (quoting *Bridgestone*, 430 F. Supp. 2d at 740)[3]; *EEOC v. Regis Corp.*, No. 99 C 8270, 2001 U.S. Dist. LEXIS 11351, at *5 (N.D. Ill. Jan. 17, 2001) (granting permissive intervention where the intervenors "could possibly initiate their own lawsuits paralleling the litigation at hand" because "it would be a waste of time and resources to allow multiple lawsuits to proceed"); *United States v. Marsten Apts.*, 175 F.R.D. 265, 267 (E.D. Mich.

---

[2]    *Eggleston v. Chi. Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981); *see also Kline v. Wolf*, 702 F.2d 400, 402-03 (2d Cir. 1983) ("a court must be wary of a defendant's efforts to defeat representation of a class on grounds of inadequacy when the effect may be to eliminate any class representation").

[3]    Here, as elsewhere, emphasis has been added or citations omitted unless otherwise noted.

1997) ("'The purpose of the rule allowing intervention is to prevent a multiplicity of suits where common questions of law or fact are involved.'"). In *Birmingham Steel*, the 11th Circuit rejected the contention that "class members would suffer no prejudice," "as they could still litigate their actions individually," holding that "the former Fifth Circuit nevertheless concluded that the respective district courts erred in those cases by not allowing class members an opportunity to intervene." 353 F.3d at 1340.

### C. Central Laborers' Motion Is Timely

Central Laborers' Motion to Intervene was timely, as it was filed within 15 days of the Court's opinion denying Lead Plaintiff's Motion for Class Certification. Contrary to defendants' misstatement of the law (Defs' Opp. at 7), the determination of whether a motion to intervene is timely turns upon how quickly the intervenor responded once he was "alerted" that his "interest was not being adequately protected," not upon when he knew about the existence of the lawsuit. *Jansen v. Cincinnati*, 904 F.2d 336, 341 (6th Cir. 1990) (motion to intervene was timely – even though intervenor knew about the litigation from "the outset" – because he filed the motion within two weeks of learning that his interests were no longer being adequately represented). *See also Lopez v. Metro. Gov't*, No. 3-07-0799, 2008 U.S. Dist. LEXIS 89988, at *11-*12 (M.D. Tenn. Nov. 4, 2008) (J. Griffin) (same). Notably, the "timeliness" element is construed *broadly in favor of the party seeking intervention*. *Grubbs v. Norris*, 870 F.2d 343, 345 (6th Cir. 1989) (adopting Ninth Circuit's more liberal standard of review in Rule 24(a) cases); *Westlands Water Dist. v. United States*, 700 F.2d 561, 563 (9th Cir. 1983); 7C Charles A. Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice & Procedure* §1904 (2007).

### 1. Central Laborers Timely Moved After the Court Issued an Order Potentially Impacting Its Interests

Again, *Bridgestone* is instructive as under nearly identical circumstances, Judge Echol's held that the "Motion to Intervene is timely brought" even though the proposed intervenor "undoubtedly

knew about the pendency of this action from its inception, the necessity of [its] requested intervention as a party plaintiff did not arise until after the Sixth Circuit issued its opinion. At that point, [it] realized that the only other institutional investor in the case,[], could no longer represent the interests of [it] and other institutional investors." 430 F. Supp. 2d at 740. *See also Grubbs*, 870 F.2d at 346 (reversing district court's denial of motion to intervene and holding that the court's order "triggered [intervenor's] clear interest in the action"); *Midwest Realty Mgmt. Co. v. City of Beavercreek*, 93 Fed. Appx. 782, 787-88 (6th Cir. 2004) ("The proposed intervenors undoubtedly knew that this litigation could affect their legal interests from the beginning. However, it was not until there was reason to believe their interests were not being adequately represented by the City that they would have been alerted to the need to seek intervention."); *In re Enron Corp. Sec. Deriv. & "ERISA" Litig.*, No. MDL-1446, 2004 WL 405886, at *33 (S.D. Tex. Feb. 25, 2004) (recognizing that "'scarce judicial resources would be squandered, and the litigation costs to parties would be increased'" if "[k]nowledge of the pendency of the litigation" was "sufficient by itself to require immediate motion to intervene"). Here, Central Laborers' interests were adequately protected by Lead Plaintiff until the Court denied Lead Plaintiff's Motion for Class Certification. Defendants' assertion that Central Laborers should have known its interests were impaired prior to this decision is not supported by the record as Lead Plaintiff's investment advisor had testified under oath that he was unaware of the allegedly omitted facts prior to their public disclosure during the Class Period.[4] *See* Section IV, *infra*. Thus, the motion is clearly timely.[5]

---

[4]    Even if the Court considered the date upon which defendants first raised their arguments against Lead Plaintiff's certification as a class representative as the triggering date for timeliness, Central Laborers' Motion was still timely filed. *See Midwest Realty*, 93 Fed. Appx. at 788 (reversing district court's denial of motion to intervene and holding that "the passing of four months before [intervenors] filed their motion . . . does not constitute the sort of undue delay or reflect the sort of unexcused dilatoriness that would disqualify them from intervention"). Moreover, for the reasons discussed below, defendants' arguments against Lead Plaintiff were contradicted by the

### 2. The Pretrial Schedule and Ongoing Discovery in No Way Prevent Intervention

Defendants next assert that intervention should be denied because the litigation has progressed into discovery and past the deadline to amend the pleadings to add parties. Defs' Opp. at 6-9. These facts do not prevent intervention. This Court recently granted intervention in a class action where the "case was filed over a year ago, [and] discovery [was] almost complete." *Lopez*, 2008 U.S. Dist. LEXIS 89988, at *9. *See also Jansen*, 904 F.2d at 341 (reversing district court's denial of motion to intervene and holding that intervention was timely, even though "half of the twelve month discovery period had elapsed"). Defendants' citation to the Court's prior case management order is also misleading as it omits that the "May 25, 2009" deadline was to "***amend the pleadings*** to add parties," not for a non-party to file a motion to intervene. In *Mille Lacs Band of Chippewa Indians v. Minn.*, the 8th Circuit addressed this very issue, holding that the district court had abused its discretion in denying a motion to intervene as untimely where the proposed intervenor had filed his motion nine months after the deadline for motions to add parties. 989 F.2d 994, 998-99 (8th Cir. 1993); *see also EEOC v. CRST Van Expedited, Inc.*, No. C07-0095, 2008 U.S. Dist. LEXIS 75354, at *6-*9 (N.D. Iowa Sept. 26, 2008) (motion to intervene was timely despite being filed several months after the court ordered deadline to add parties). The 8th Circuit further explained:

> The fact that the landowners sought intervention after the June 28, 1991 deadline does not automatically preclude them from intervening. The record does not clearly

---

testimony of Neal Kaufman and subsequently have been contradicted by defendants' own request for admission responses. When these facts are considered in their entirety, there can be no doubt that, under the circumstances, Central Laborers' Motion to Intervene has been timely filed.

[5]     Defendants' citation to *Boston Scientific* is inapposite as the "unusual circumstances" present in *Boston Scientific* are clearly not present in this case. In *Boston Scientific*, the court expressed its concern with the proposed intervenor, a lead plaintiff who previously withdrew from the case, noting that "it would be unfair to defendants to permit Hochstadt to duck in and out of the case at his convenience," in order to avoid being deposed. *In re Boston Scientific Corp. Erisa Litig.*, 254 F.R.D. 24, 35 (D. Mass. 2008). No such circumstances are present here.

establish whether the deadline applied only to motions brought by existing parties, or whether the trial court intended that the deadline also cover motions to intervene. Even if the deadline was intended to apply to motions to intervene, the mere fact that the landowners moved to intervene after it had expired would not necessarily mean that their motion was untimely.

*Mille Lacs*, 989 F.2d at 998. Rather, as the 8th Circuit explained, whether the proposed intervenor's motion was timely turned upon how far the proceedings have gone when the movant sought to intervene, the prejudice which resultant delay might cause to other parties, and the reason for the delay. *Id.* (citing *Ark. Elec. Energy Consumers v. Middle S. Energy, Inc.*, 772 F.2d 401, 403 (8th Cir. 1985)).[6]

Here, the motion before this Court is not a motion to amend the pleadings. In any event, because Central Laborers' interests did not become potentially inadequately represented until October 5, 2009, the motion to amend the pleadings deadline cannot be applied to bar it from intervening in this action as it has timely moved to protect its interests once they became potentially impaired.

**D.    Evidence of Defendants' Conduct that Is Alleged to Have Violated the Federal Securities Laws Is the Same for Central Laborers and Each of the Members of the Class and Thus the Discovery Currently Being Produced by Defendants Will Not Be Impacted by the Intervention**

Defendants completely ignore that Central Laborers' intervention into this case will have no impact on the pre-trial schedule – a schedule which ironically defendants have already said they will be unable to comply with – as Central Laborers has adopted the Complaint in this action and will require the identical discovery to prove its claims that the Lead Plaintiff has already sought and is in

---

[6]    Intervention under Rule 24, of course, is separate and distinct from the addition of parties, which is governed by Fed. R. Civ. P. 15(a), Fed. R. Civ. P. 20 and Fed. R. Civ. P 21. *See Cureton v. NCAA*, No. 97-131, 1998 U.S. Dist. LEXIS 20263 (E.D. Pa. Dec. 18, 1998) (denying potential intervenors' motion to be added as a party-plaintiff under Rule 21, but granting their motion to intervene under Rule 24); *United States ex. rel. Precision Co. v. Koch Indus.*, 31 F.3d 1015, 1017 (10th Cir. 1994) ("the addition of parties does not constitute intervention").

the process of obtaining. This fact was recognized by Judge Campbell when he found that common issues of fact and law exist between members of the class. *See* October 5, 2009 Memorandum Opinion at 3-4 ("the Court finds that the Fund has carried its burden of establishing commonality under Rule 23(a)"). Furthermore, Central Laborers' Motion for Class Certification, which has already been filed, also relies on the previously filed expert declarations of Professor Steven Feinstein in support of Lead Plaintiff's Motion for Class Certification, whom defendants have already deposed and fully addressed in their originally filed opposition to Lead Plaintiff's Motion for Class Certification. *See* Central Laborers' Notice of Motion for Class Certification (Docket No. 148) and Feinstein Declarations (Docket Nos. 96 and 131). Thus, defendants' suggestion that these issues would need to be re-litigated lacks merit. The only additional discovery that will be required with respect to class certification is the production of documents relating to Central Laborers' transactions in Healthways' stock, which has already in large part occurred, and a potential deposition of a representative of Central Laborers and/or its investment advisor. None of this discovery will impact the discovery cut-off or the pre-trial schedule.

## III.    CENTRAL LABORERS' MOTION FOR PERMISSIVE INTERVENTION SHOULD BE GRANTED

Central Laborers also satisfies the requirements of permissive intervention. This is precisely the kind of scenario for which permissive intervention was created, as one court has noted, "'[t]he most obvious case for permissive intervention, of course, is the situation where the intervener has a claim against the defendant similar to or identical with that asserted by the plaintiff.'" *McCausland v. S'holders Mgmt. Co.*, 52 F.R.D. 521, 523 (S.D.N.Y. 1971).

Generally, courts "appear to be particularly amenable to permissive intervention when no additional issues are presented to the case, when the intervenor's claims are 'virtually identical' to class claims, and when intervention would strengthen the adequacy of class representation." 5 A. Conte & H. Newberg, *supra*, §§16:8-16:9; *Enron*, 2004 WL 405886, at *33; *see also In re Lutheran*

*Bhd. Variable Ins. Products Co. Sales Practices Litig.*, No. 99-MD-1309 (PAM), 2002 WL 31371945, at *4 (D. Minn. Oct. 7, 2002) ("intervention under Rule 24(b) is allowable in the context of class actions to enhance or strengthen the representation of the class").[7]

### A. The Court Has Already Held that Common Issues Exist for All Class Members

As set forth in its memorandum in support of its motion, because Central Laborers seeks to intervene in a class action, the test for a common question of law or fact is easily met. *See Davis v. Southern Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 670 (S.D. Fla. 1993); *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 382 (D. Del. 1990); *McKay v. Heyison*, 614 F.2d 899, 907 (3d Cir. 1980); 5 A. Conte & H. Newberg, *supra*, §16:8 (permissive intervention may be granted to bolster class representation). As a class member, Central Laborers' claims are ***identical*** to those originally brought; in fact, Central Laborers has adopted the Consolidated Complaint. Rule 24(b) permits intervention of Central Laborers here as a class member seeking to bolster the representation of the class. *See, e.g.*, *Zicklin v. Breuer*, 534 F. Supp. 745, 748-49 (S.D.N.Y. 1982); *Austell v. Smith*, 634 F. Supp. 326, 334-35 (W.D.N.C. 1986); *see also Enron*, 2004 WL 405886, at *25.

The law is clear that the claims of the potential class members need not be factually identical. *Bovee v. Coopers & Lybrand*, 216 F.R.D. 596, 608 (S.D. Ohio 2003). "Rather, 'the commonality

---

[7]     Indeed, courts routinely seek to ensure adequate class representation. *See Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 202 (S.D.N.Y. 1992) (rejecting defendants' arguments that intervention was untimely, the court noted that in class actions, intervention is "highly desirable" "to ensure adequate class representation"). Also, courts recognize that if defendants challenge the adequacy of a proposed or actual class representative, the proper course is to permit other class members to enter the action as a substitute. *See, e.g.*, *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 881 (9th Cir. 1999) (district court erred in granting summary judgment and not permitting amendment to substitute proper class representatives); *Lynch*, 651 F.2d at 388 (error for district court to dismiss action without affording absent class members opportunity to intervene as new plaintiffs); *Robin v. Doctors Officenters Corp.*, 686 F. Supp. 199, 204 (N.D. Ill. 1988) (court denied motion to decertify class and ordered class to select additional representative); *Barkman v. Wabash, Inc.*, No. 85 C 611, 1988 WL 5039, at *2-*3 (N.D. Ill. Jan. 20, 1988) (court certified class but ordered that second class representative be proffered to represent the interest of certain class members).

requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the Defendant and the general policy is the focus of the litigation.'" *Id*. In other words, the class representatives must enumerate questions of law or fact common to the class, "the resolution of which will advance the litigation." *Sprague v. GMC*, 133 F.3d 388, 397 (6th Cir. 1998). In this case, Judge Campbell has already held that that the following common issues of law and fact exist:

(1) whether the Exchange Act was violated by Defendants' acts and omissions;

(2) whether the information disseminated by Defendants during the relevant period misrepresented facts about the Company's performance and financial condition;

(3) whether Defendants' statements omitted material facts necessary to make those statements, under the circumstances, not misleading;

(4) whether the market price of Company stock during the relevant period was artificially inflated because of misrepresentations by Defendants;

(5) whether Defendants acted knowingly or recklessly in misrepresenting material facts; and

(6) whether the Fund and other members of the class have sustained damages and, if so, the appropriate measure thereof.

October 5, 2009 Memorandum Opinion at 3-4. Because its claims are common to Lead Plaintiff's and the other members of the class, Central Laborers should be permitted to intervene.[8]

---

[8]    Contrary to defendants' assertion (Defs' Opp. at 13), it is well settled that differences in when class members purchased during the Class Period do not give rise to a conflict of interest that would prevent certification of the class. *See, e.g.*, *In re BellSouth Corp. Sec. Litig.*, No. 1:02-cv-2142-WSD, 2006 U.S. Dist. LEXIS 15518, at *16 (N.D. Ga. Apr. 3, 2006); *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 697 (N.D. Ga. 2002); *In re Profit Recovery Group Int'l, Inc. Sec. Litig.*, No. 1:00-CV1416-CC, slip op. at 23 (N.D. Ga. Dec. 3, 2002) ("any differences in when class members purchased or how long they held shares affect only damages, and differences in damages do not affect typicality"); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003); *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 452 (S.D. Ohio 2009) ("While different class members will have varying issues relating to damages, this is not enough to prevent class certification. 'The traditional rule is that a plaintiff class should be certified despite conflicts over damages issues . . . .'"); *Bovee*, 216 F.R.D. at 611 ("'Individual differences regarding the purchasing and selling of stock during the proposed class period does not destroy the typicality requirement. All

## B. Central Laborers Intervention Serves the Interest of Justice

Rule 23 of the Federal Rules of Civil Procedure vests the trial court with the authority and responsibility of protecting the interests of a plaintiff class and its absent members. *In re Rospatch Sec. Litig.*, No. 1:90-CV-805, 1991 U.S. Dist. LEXIS 20529, at *4-*5 (W.D. Mich. Nov. 13, 1991) (citing *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 331 (1980)) (discussing responsibility of a district court to protect absent class and integrity of judicial process by monitoring class actions). The defendants ask this Court to turn a blind eye to its role as the steward of the class alleged in this case. Because doing so would miscarry justice, repudiate the district court's responsibility to ensure the fair adjudication of the claims of the members of the alleged class, and abrogate the inherent purposes of Rules 23 and 24 in authorizing and providing procedures for the just resolution of this class case, defendants' suggestion should be disregarded.

## IV. DEFENDANTS' REQUEST FOR COSTS MUST BE DENIED

"As a general rule, a federal court may not award attorney's fees . . . unless a statute or a binding contract authorizes such a recovery." *Baldwin v. Burger Chef Sys., Inc.*, 507 F.2d 841, 841 (6th Cir. 1974). Indeed, the Sixth Circuit has clearly held that attorney's fees may be recovered only "in certain extraordinary circumstances," for example, "when an adversary has acted in bad faith or vexatiously." *Id.* at 842. In this case no such circumstance exists. Defendants' do not dispute that Lead Plaintiff West Palm Beach Firefighters' Pension Fund moved in good faith to be certified as a class representative in this action. Accordingly, no basis exists to award costs. Under the circumstances described below, defendants' request for costs is absurd.

---

purchasers of stock during a class period share a common interest in showing that the stock was unlawfully inflated.'"). In the class certification context, differences in the amount of damages suffered do not give rise to a conflict of interest preventing the proposed class representative from representing the class (does not render class representative atypical or inadequate). Defendants cite no case to the contrary.

**A.** **Defendants Have Recently Admitted that Neither Leedle nor Chaput Provided Any Material Information to Lead Plaintiff's Investment Advisor that Was Not Also Contained in the Company's Public Filings, Thus Defendants Are Precluded from Arguing that Lead Plaintiff Is Subject to the Unique Defense Raised in Defendant's Opposition to Class Certification**

Lead Plaintiff West Palm Beach Firefighters' Pension Fund previously moved in good faith to be certified as a class representative in this action. In opposition to this motion, defendants argued that the Lead Plaintiff was subject to unique defenses because the Fund's investment manager relied on discussions with Company management in deciding to purchase Healthways' stock. Defendants' Opposition to Plaintiff's Motion for Class Certification ("Defs' Class Cert. Opp.") (Docket No. 124) at 6. Defendants further argued that the fact of these conversations rendered the Lead Plaintiff atypical, as the trier of fact could be distracted by a unique defense relating to whether or not the Lead Plaintiff relied on the company's public statements in press releases and SEC filings and/or the market price of Healthways' stock. *Id*. at 6-17. On October 5, 2009, the Court denied Lead Plaintiffs' Motion for Class Certification, holding that the presence of this arguable unique defense or possible rebuttal of the fraud on the market presumption of reliance rendered Lead Plaintiff atypical, as it could distract the parties and presumably the trier of fact from the common issues involved in this litigation. October 5, 2009 Memorandum Opinion at 7-10.

On October 15, 2009, plaintiffs served defendants Leedle and Chaput with Requests for Admissions designed to determine whether or not any such unique communications occurred. On November 6, 2009, defendants responded to the Requests for Admissions and unequivocally admitted that neither Leedle nor Chaput, nor any other Healthways' executive, communicated any material information to Lead Plaintiff's investment advisor, or any other analyst, that was not also contained in the company's public filings or press releases. *See* Ex. 1. Accordingly, defendants have now candidly admitted that the potential unique defense they raised in their opposition to Lead Plaintiff's Motion for Class Certification will not be a distraction in this case, as no factual basis

- 15 -

exists for the defendants to assert that the Lead Plaintiff relied on unique non-public communications with company executives. Because defendants' newly served Requests for Admissions Responses preclude them from raising this defense at trial, it will not be a distraction, and thus, Lead Plaintiff is indeed a typical class representative. *See* Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established . . . .").

**B. Defendants' Request for Costs Is Absurd as Defendants' Opposition to Lead Plaintiff's Motion for Class Certification Was Not Filed in Good Faith as Defendants Had No Basis to Believe that Leedle or Chaput Communicated Any Material Non-Public Information to Kaufman**

Defendants request for costs must be denied. In fact, defendants have only themselves or their counsel to blame for any alleged unnecessary duplication of effort in the class certification phase of this litigation. In fact, but for defendants making arguments for which they had no good faith factual basis, the parties would likely not be in this position. In their opposition to Lead Plaintiff's Motion for Class Certification, defendants repeatedly argued that Lead Plaintiff was atypical because its investment advisor "relied on discussions with company management" and "that he was aware of the supposedly undisclosed facts" as a result. Defs' Class Cert. Opp. at 5-16. Although defendants submitted no evidence as to the substance of these communications, they asserted, contrary to the sworn testimony of Neal Kaufman, that Kaufman was aware of allegedly undisclosed information, and that any litigation of this unique issue would be a distraction and thus, the Lead Plaintiff was not typical. In fact, Kaufman testified that he was unaware of any the allegedly omitted material facts addressed in the Complaint:

> Q. Prior to January 28, 2008, you weren't aware that Healthways was unable to meet a budget neutral savings target, correct?
>
> A. That's correct.

Defs' Class Cert. Opp., Ex. 2(a), Kaufman Depo. at 153:13-17.

> Q. Prior to that information being disseminated in mid-February 2008, were you aware that the Blue Cross contract might be canceled?

A.    No.

*Id.* at 148:1-4.

Because defendants have now likewise admitted that neither Leedle, Chaput nor any Healthways' executive communicated any material information to Kaufman that was not also contained in company press releases and SEC filings, they are now precluded from asserting any defense of non-reliance at trial based on these communications, and thus, this issue will not be a distraction which would render the Lead Plaintiff atypical.  *See* Ex. 1.

## V.    CONCLUSION

For the above stated reasons Central Laborers' Motion to Intervene should be granted and defendants' request for costs should be denied.

DATED:  November 10, 2009                    Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
THOMAS E. EGLER
SCOTT H. SAHAM
JESSICA T. SHINNEFIELD
JENNIFER Y. LAI
MATTHEW I. ALPERT


                                         s/ Scott H. Saham
                              _____
                                    SCOTT H. SAHAM

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tome@csgrr.com
scotts@csgrr.com
jshinnefield@csgrr.com
jlai@csgrr.com
malpert@csgrr.com

Lead Counsel for Plaintiffs

BARRETT, JOHNSTON & PARSLEY
GEORGE E. BARRETT
DOUGLAS S. JOHNSTON, JR.
TIMOTHY L. MILES
217 Second Avenue North
Nashville TN 37201
Telephone: 615-244-2202
615-252-3798 (fax)
gbarrett@barrettjohnston.com
djohnston@barrettjohnston.com
tmiles@barrettjohnston.com

Liaison Counsel

DYER & BERENS LLP
JEFFREY A. BERENS
ROBERT J. DYER III
682 Grant Street
Denver, Colorado 80203
Telephone: (303) 861-1764
(303) 395-0393 (fax)
jeff@dyerberens.com
bob@dyerberens.com

HOLZER, HOLZER & FISTEL, LLC
COREY D. HOLZER
MICHAEL I. FISTEL, JR.
MARSHALL DEES
200 Ashford Center North, Suite 300
Atlanta, GA 30338
Telephone: 770/392-0090
770/392-0029 (fax)
cholzer@holzerlaw.com
mfistel@holzerlaw.com
mdees@holzerlaw.com

Additional Counsel for Plaintiffs

CAVANAGH & O'HARA
PATRICK J. O'HARA
407 East Adams Street
Springfield, IL 62701
Telephone: 217/544-1771
217/544-9894 (fax)

Attorneys for Intervenor Plaintiff Central
Laborers Pension Fund

## CERTIFICATE OF SERVICE

I hereby certify that on this the 10th day of November 2009, the foregoing CENTRAL LABORERS' PENSION FUND'S REPLY IN SUPPORT OF MOTION TO INTERVENE was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

**George Edward Barrett**
Barrett, Johnston & Parsley
217 Second Avenue, North
Nashville, TN 37201
615/244-2202
615/252-3798 (Fax)
gbarrett@barrettjohnston.com
lbrock@barrettjohnston.com

**Jeffrey A. Berens**
Dyer & Berens LLP
682 Grant Street
Denver, CO 80203-1764
303/861-1764
303/395-0393(Fax)
jeff@dyerberens.com

**Paul Kent Bramlett**
Bramlett Law Offices
P.O. Box 150734
Nashville, TN 37215-0734
615/248-2828
615/254-4116(Fax)
pknashlaw@aol.com

**Robert P. Bramlett**
Bramlett Law Offices
P.O. Box 150734
Nashville, TN 37215-0734
615/248-2828
615/254-4116(Fax)
robert@bramlettlawoffices.com

**Marshall Dees**
Holzer Holzer & Fistel, LLC
200 Ashford Center North, Suite 300
Atlanta, GA 30338
770/392-0090
770/392-0029(Fax)
mdees@holzerlaw.com

**Wallace Wordsworth Dietz**
Bass, Berry & Sims, PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238-2700
615/742-6200
615/742-6293(Fax)
wdietz@bassberry.com

**Robert J. Dyer , III**
Dyer & Berens LLP
682 Grant Street
Denver, CO 80203-1764
303/861-1764
303/395-0393(Fax)
bob@dyerberens.com

**Thomas E. Egler**
Coughlin Stoia Geller Rudman & Robbins LLP
655 West Broadway, Suite 1900
San Diego, CA  92101-3301
Telephone:  619/231-1058
619/231-7423 (Fax)
tegler@csgrr.com

**Michael I. Fistel , Jr.**
Holzer Holzer & Fistel, LLC
200 Ashford Center North, Suite 300
Atlanta, GA 30338
770/392-0090
770/392-0029(Fax)
mfistel@holzerlaw.com

**Corey D. Holzer**
Holzer Holzer & Fistel, LLC
200 Ashford Center North, Suite 300
Atlanta, GA 30338
770/392-0090
770/392-0029(Fax)
cholzer@holzerlaw.com

**Susan E. Hurd**
Alston & Bird, LLP
1201 W. Peachtree Street
Atlanta, GA 30309-3424
404/881-7000
404/881-7777(Fax)
susan.hurd@alston.com
elizabeth.skola@alston.com
angie.knowles@alston.com

**D. Seamus Kaskela**
Barroway Topaz Kessler Meltzer & Check,
LLP
280 King of Prussia Road
Radnor, PA 19087
610/667-7706
610/667-7056(Fax)
skaskela@sbtklaw.com

**John L. Latham**
Alston & Bird, LLP
1201 W. Peachtree Street
Atlanta, GA 30309-3424
404/881-7000
404/881-7777(Fax)
john.latham@alston.com

**David M. Promisloff**
Barroway Topaz Kessler Meltzer & Check,
LLP
280 King of Prussia Road
Radnor, PA 19087
610/667-7706
610/667-7056(Fax)
dpromisloff@sbtklaw.com

**Darren J. Robbins**
Coughlin Stoia Geller Rudman & Robbins
LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (Fax)
darrenr@csgrr.com

**Douglas S. Johnston , Jr.**
Barrett, Johnston & Parsley
217 Second Avenue, North
Nashville, TN 37201
615/244-2202
615/252-3798(Fax)
djohnston@barrettjohnston.com

**Jennifer Yeu-Jeng Lai**
Coughlin Stoia Geller Rudman & Robbins
LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (Fax)
jlai@csgrr.com

**Timothy L. Miles**
Barrett, Johnston & Parsley
217 Second Avenue, North
Nashville, TN 37201
615/244-2202
615/252-3798(Fax)
tmiles@barrettjohnston.com

**Brian D. Roark**
Bass, Berry & Sims, PLC
315 Deaderick Street, Suite 2700
Nashville, TN 37238-2700
615/742-6200
615/742-6293(Fax)
broark@bassberry.com
virwin@bassberry.com
lmccampbell@bassberry.com
elizabeth.skola@alston.com

**Samuel H. Rudman**
Coughlin Stoia Geller Rudman & Robbins
LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (Fax)
srudman@csgrr.com

**Scott H. Saham**
Coughlin Stoia Geller Rudman & Robbins
LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (Fax)
scotts@csgrr.com

**Jessica Shinnefield**
Coughlin Stoia Geller Rudman & Robbins
LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (Fax)
jshinnefield@csgrr.com

**Patrick J. O'Hara**
Cavanagh & O'Hara
407 East Adams Street
Springfield, IL 62701
Telephone: 217/544-1771
217/544-9894 (fax)
patrick@cavanagh-ohara.com

I certify under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct. Executed on November 10, 2009.

s/ Scott H. Saham
SCOTT H. SAHAM

COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
655 West Broadway, Suite 1900
San Diego, CA 92101-3301
Telephone: 619/231-1058
619/231-7423 (fax)
E-mail: scotts@csgrr.com