IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JOHN RICHARD BEACH | ) | No. 3-08-0569 |
| | ) | |
| v. | ) | Consolidated with |
| | ) | No. 3-08-0666 |
| HEALTHWAYS, INC.; THOMAS G. | ) | |
| CIGARRAN; BEN R. LEEDLE, JR.; | ) | |
| MARY A. CHAPUT; DONALD | ) | |
| TAYLOR; MARY HUNTER; and | ) | |
| MATTHEW KELLIHER | ) | |

O R D E R

Pursuant to the order entered November 2, 2009 (Docket Entry No. 160), a hearing on the motion to intervene, the defendants' motion to stay, and the defendants' proposed modifications of the discovery plan was held on November 12, 2009, at which time the defendants' motion for protective order to stay discovery (Docket Entry No. 141) was DENIED, and the motion of Central Laborers' Pension Fund ("CLPF") to intervene as a named plaintiff (Docket Entry No. 145) was GRANTED, as provided below.

Motion to Stay

The defendants sought to stay merits discovery until the ruling on the plaintiffs' renewed motion for class certification (Docket Entry No. 148). Since, by order entered October 5, 2009 (Docket Entry No. 137), the Court denied the motion of the lead plaintiff West Palm Beach Firefighters' Pension Fund for class certification (Docket Entry No. 93), the defendants want to insure that a class will actually be certified before the voluminous discovery is completed.

The defendants point to the massive discovery already produced[1] and to be produced and the costs incurred and to be incurred and argue that, if a class is ultimately not certified or if the class

---

[1] As of October 30, 2009, the defendants produced almost 1.7 million pages of documents. Docket Entry No. 162, at 5 n.5. Since the defendants have produced documents for less than one quarter of all custodians, they hypothesize that they would end up producing at least 6.8 million pages of documents in total. Id. at 6 n.7.

period were shortened, the defendants will have spent millions of dollars for naught. The defendants point out that, although they raised the issue of the duration of the class period in their opposition to the plaintiffs' prior motion for class certification, the Court specifically declined to address that issue since it found that the claims of the West Palm Beach Firefighters' Pension Fund were subject to atypical defenses and that its ability to protect the interests of the class was inadequate. See Docket Entry No. 136, at 11. Therefore, without a stay, the defendants will be subject to discovery related to a class period of 14 months, which might later be narrowed to as few as five months.

In response, the plaintiffs argue that there is no indication that the proposed intervenor CLPF will be subject to a unique defense, as was West Palm Beach Firefighters' Pension Fund, which formed the basis of the denial of class certification. The plaintiffs also argue, inter alia, that, except during the pendency of a motion to dismiss, the Private Securities Litigation Reform Act ("PSLRA") does not authorize a stay of discovery and that case law does not support such a stay. In addition, the plaintiffs point out that the amount of discovery involved in this case is not atypical of the amount of discovery in other large securities cases. See Docket Entry No. 157.

Although the Court acknowledges the possibility that the defendants may be required to engage in discovery that ultimately is determined unnecessary, the time frames in this case simply do not permit the luxury of phasing or bifurcating discovery in the manner proposed by the defendants.[2] The orders entered March 25, 2009 (Docket Entry Nos. 81-82), provided a March 31, 2010, deadline for completion of discovery. Although an extension of that deadline to June 30, 2010, was addressed on November 12, 2009, and is reflected in the order entered November 13, 2009 (Docket Entry No. 168), that expanded time period is still not sufficient to allow any portion of discovery to await the outcome of the pending motion for class certification.

---

[2] The plaintiffs argue that merits and class certification discovery are "so inextricably intertwined" that such a bifurcation of discovery would, in any event, be inefficient and impractical. See Docket Entry Nos. 156 and 159, at 17.

2

Case 3:08-cv-00569   Document 174   Filed 01/08/2010   Page 2 of 11

<u>Motion to Intervene</u>

CLPF seeks to intervene as a plaintiff as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure or, alternatively, for permissive intervention pursuant to Rule 24(b)(2). The defendants opposed the motion on the grounds that CLPF has not shown that its interests are not being adequately represented by the existing parties, that the request to intervene is untimely, that CLPF does not have a substantial interest in this litigation because its interest is purely economic, and that the defendants would be substantially prejudiced if the motion were granted.

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides as follows:

On timely motion, the court must permit anyone to intervene who:

\*\*\*

claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A movant seeking to intervene as of right pursuant to Rule 24(a)(2) must show the following: (1) that the motion to intervene was timely; (2) that the movant has a substantial interest in the subject matter of the case; (3) that the movant's ability to protect that substantial legal interest may be impaired in the absence of intervention; and (4) that the parties already before the Court may not adequately represent the proposed intervenor's interest. <u>Coalition to Defend Affirmative Action v. Granholm,</u> 501 F.3d 775, 779 (6th Cir. 2007), <u>petition for cert. denied,</u> 2008 WL 728200 (Oct. 6, 2008); <u>Northeast Ohio Coalition for the Homeless and Serv. Employees Int'l Union, Local 1199 v. Blackwell,</u> 467 F.3d 999, 1007 (6th Cir. 2006); <u>Providence Baptist Church v. Hillandale Comm., Ltd.,</u> 425 F.3d 309, 315 (6th Cir. 2005); <u>United States v. Michigan,</u> 424 F.3d 438, 443 (6th Cir. 2005); <u>United States v. Tennessee,</u> 260 F.3d 587, 591-92 (6th Cir. 2001); <u>Stupak-Thrall v. Glickman,</u> 226 F.3d 467, 471 (6th Cir. 2000); <u>Jordan v. Michigan Conference of Teamsters Welfare Fund,</u> 207 F.3d 854, 862 (6th Cir. 2000); <u>Grutter v. Bollinger,</u> 188 F.3d 394, 397-98 (6th Cir. 1999); <u>Michigan State AFL-CIO v. Miller,</u> 103 F.3d 1240, 1245 (6th Cir. 1997); <u>United States v. Detroit Internat'l Bridge Co.,</u> 7 F.3d 497, 499 (6th Cir. 1993); <u>Cuyahoga Valley Ry. Co. v. Tracy,</u> 6 F.3d

3

389, 395 (6th Cir. 1993); Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990); Grubbs v. Norris, 970 F.2d 343, 345 (6th Cir. 1989); Bradley v. Milliken, 828 F.2d 1186, 1191 (6th Cir. 1987). A movant for intervention must satisfy all four prongs and failure to satisfy one of the prongs will result in denial of the motion. United States v. Michigan, supra; Grubbs, supra.

Although most frequently addressed in the context of determination of whether a putative intervenor has a substantial interest in the litigation, the Court of Appeals for the Sixth Circuit has also held that, in general, requests for intervention should be construed liberally in favor of granting intervention. See Midwest Realty Mgmt. Co. v. City of Beavercreek, 93 Fed.Appx. 782, 784 (6th Cir. 2004); Stupak-Thrall, 226 F.3d at 472; Purnell, 925 F.2d at 950.

### A. Timeliness

An evaluation of the timeliness of a motion to intervene should be made in the context of the relevant circumstances. Jansen, supra; Bradley v. Milliken, supra. Factors to be considered are (1) the point to which the lawsuit has progressed; (2) the purpose for which the intervention is sought; (3) the length of time that the movant knew or should have known of its interest in the case before it actually sought to intervene; (4) the prejudice to the original parties due to the movant's failure to promptly intervene after it knew or should have known of its interest in the case; and (5) the existence of unusual circumstances militating against or in favor or intervention. Tennessee, 260 F.3d at 592; Stupak-Thrall, 226 F.3d at 473; Cuyahoga Valley, 6 F.3d at 395-96; Jansen, supra; Grubbs, supra.

(1)     Point to Which Lawsuit Has Progressed

The defendants argued that the litigation has progressed significantly with extensive time, resources and effort devoted to the case, including millions of pages of documents produced by the defendants and other discovery, and substantive motion practice, resulting in significant legal fees already having been incurred. On the other hand, the plaintiffs contend that both fact and expert discovery will be substantially unaffected.

4

This consideration dovetails into the factor of prejudice to the defendants. As addressed infra, while the Court acknowledges that there will be some prejudice to the defendants in addressing a renewed motion for class certification, the claims have not changed and the Court agrees with the plaintiffs that the additional discovery will not be substantial.

(2)     Purpose for Intervention

It is undisputed that the purpose for seeking intervention is for CLPF to be appointed as a class representative and to seek class certification. The Court finds that the plaintiffs have a legitimate concern that, as individual investors with relatively small economic interests, they are not in as good a position to seek class certification as a large institutional investor.

(3)     Length of Time Movant Knew or Should Have Known of Its Interest

The defendants argued that CLPF knew or should have known of this lawsuit as early as June of 2008, when press releases were issued announcing that this case had been filed. The defendants also point out that the motion to intervene was filed five months after the May 25, 2009, deadline to move to add additional parties established by orders entered March 25, 2009 (Docket Entry Nos. 81 and 82).

However, it was not until October 5, 2009, that the motion for class certification was denied and the Court found that West Palm Beach Firefighters' Pension Fund was not an adequate class representative because it was subject to atypical defenses. Fifteen days after entry of the October 5, 2009, order (Docket Entry No. 137), CLPF filed its motion to intervene.

In support of its opposition to the motion, the defendants cite Boston Scientific Corp. Erisa Litig., 254 F.R.D. 24 (D. Mass. 2008), in which the Court held that "timeliness turns on when the applicant [for intervention] first learned that he had any interest in the case, not when the applicant decides he might be needed." 254 F.R.D. at 34. However, the Court in Boston Scientific relied significantly on the "unusual circumstance" of the case, specifically the fact the putative intervenor

5

had been an original plaintiff who, after over two years, withdrew from the case but later sought to intervene when it appeared that class certification might be denied. The Court found that, under the specific factual circumstances, the plaintiff should not be permitted to "duck in and out of the case at his convenience." Id. at 35.

On the other hand, the plaintiffs contend that the situation in the instant case is similar to the circumstances in In re Bridgestone Secs. Litig., 430 F. Supp.2d 728 (M.D. Tenn. 2006) (Echols, J.). Although the circumstances in Bridgestone were not, as the plaintiffs suggest, identical to those in this case, the case does lend substantial support to the plaintiffs' position. In Bridgestone, the Sixth Circuit decision on appeal resulted in a finding that the stock purchase of the lead plaintiff and only institutional investor was outside of the class period and its claims were dismissed. Although the Court found that the putative intervenor "undoubtedly knew about the pendency of [that] action from its inception," the need for intervention was only apparent after the Sixth Circuit ruling. Similarly, it was not until the Court ruled on the motion for class certification that CLPF became aware of the need to intervene in this case.

Although the plaintiffs and the putative intervenors were clearly on notice of the defendants' challenge to class certification when the opposition was filed on August 17, 2009 (Docket Entry Nos. 115 and 124), the motion for class certification was not denied until October 5, 2009. Plaintiffs' counsel and CLPF acted promptly thereafter in filing the motion to intervene 15 days later.

(4)     Prejudice to Other Parties

The defendants emphasized that they have already defended a motion for class certification and, if the motion to intervene were granted, they will be faced with a second motion for class certification, along with additional discovery relating to the intervenors--all resulting in substantial, additional expense to the defendants. The defendants suggested that they would not have had to be put to the task of defending the first motion for class certification if plaintiffs' counsel had properly

6

investigated whether the West Palm Beach Firefighters' Pension Fund would have been an adequate class representative.

The plaintiffs contend that the intervention of CLPF will have no impact on the scheduling deadlines. While the ability to extend deadlines is severely constricted by the trial date, the defendants will in fact have to defend a second motion for class certification and engage in additional discovery specifically relating to CLPF.

The circumstances in this case differ from those in Bridgestone, supra, on the issue of prejudice to the defendants. In Bridgestone, the Court granted intervention of a new institutional investor before discovery had begun and before any class certification motion was filed. Therefore, the defendants are indeed correct that they will have to address another issue of class certification in this case. Although the defendants will have to address a motion for class certification filed by a different plaintiff, much of the work in addressing a class certification has been done. The Court finds that neither the additional discovery nor defending a second motion for class certification so significantly prejudices the defendants that denial of the motion to intervene is compelled.

The defendants argued that, if the motion to intervene were granted, they should be awarded some or all of its costs of over $285,000.00, previously incurred in investigating and opposing the first motion for class certification. As an initial matter, the Court questions why the defendants propose that the plaintiffs compensate them for costs already incurred rather than additional costs that will be incurred as a result of the grant of intervention since the prejudice to the defendants is not the expenses already incurred but the additional expenses that will be incurred as a result of the intervention.

Although conditions may be imposed when granting intervention, see Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 381-383, 107 S.Ct. 1177, 94 L.Ed.2d 389 (1987) (Brennan, J., concurring); Advisory Committee Notes to the 1996 amendments to Rule 24, such conditions relate to the conduct of the proceedings and scheduling matters pursuant to Rule 16 and

the Court's inherent right to manage its cases. No authority has been cited to support imposition of costs as a requirement for intervention.

(5)     Other Factors

As provided in the orders entered March 25, 2009 (Docket Entry Nos. 81 and 82), the deadline for filing motions to amend the pleadings to add parties was May 25, 2009. The plaintiffs suggest that that deadline does not apply to the non-parties who seek to intervene. At first blush, that argument appears unpersuasive. However, the factors that the Court must consider focus on issues relating to the length of time the intervenors knew or should have known of their interest and the point to which the litigation has progressed, rather than whether the intervenor met a scheduling deadline normally imposed for the parties themselves. See, e.g., Mille Lacs Band of Chippewa Indians v. State of Minn., 989 F.2d 994, 998 (8th Cir. 1993).[3]

The plaintiffs emphasize that, in the order and memorandum denying class certification, the Court already found that the proposed class met the requirements of commonality and numerosity, and only because of the unique circumstances relating to West Palm Beach Firefighters' Pension Fund was the motion for class certification denied. Although the Court did not invite a substitution of plaintiffs, neither did the Court preclude a further attempt by the plaintiffs or an intervenor to seek class certification.

B. Substantial Interest in the Subject Matter

It is not contested that CLPF has a substantial interest in the subject matter of this case. As a multi-employer pension fund, it is an institutional investor with an asserted loss of $178,181.75, having purchased almost 10,000 shares of stock. See Docket Entry No. 151. However, the

---

[3] With some legitimacy, the defendants point out that CLPF is represented by plaintiffs' counsel on other matters and is not a total stranger, represented by separate counsel, to this litigation. However, the putative intervenor's relationship to plaintiffs' counsel does not compel that it comply with deadlines established to govern the conduct of the parties.

8

defendants argued that an economic stake in the litigation is not sufficient to support the requisite substantial interest. The Court acknowledges that, in United States v. Tennessee, 260 F.3d 587 (6th Cir. 2001), the Sixth Circuit denied intervention because the requests for intervention were untimely and the putative intervenor did not have a substantial right to intervene when the intervenor's interests were solely economic. See also Blount-Hill v. Board of Educ. of Ohio, 195 Fed.Appx. 482, 2006 WL 2567451 (Sept. 5, 2006), cert. denied sub nom., White Hat Management, LLC v. Blount-Hill, 549 U.S. 1208, 127 S.Ct. 1326, 167 L.Ed.2d 80 (2007). However, in his dissent in Blount-Hill, Judge Clay pointed out that the Court in Tennessee had not held that a economic interest can never be a sufficient interest under Rule 24(a)(2), but only that an economic interest unrelated to the alleged violations would not support intervention and that there was no controlling case law in the Sixth Circuit and no consensus outside of the Sixth Circuit on the issue. 195 Fed.Appx. at 488.

The Court agrees with Judge Clay's analysis. The Court has not found any cases--nor have the defendants cited any--denying intervention to an investor in a securities case because the investor had an economic stake in the litigation. In contrast to issues of intervention raised in environmental and other public policy cases when the putative intervenor's interest is separate and apart from the violations asserted in the case, such a proposition is counter-intuitive to the legislative purpose of the PSLRA. See, e.g., In re Cardinal Health, Inc. Securities Litigation, 226 F.R.D. 298, 305-306 (S.D. Ohio 2005).[4]

### C. Impairment of Movant's Interest

The burden of showing that the interest of the movant may be impaired in the absence of intervention is minimal. See Miller, 103 F.3d at 1247. See also Purnell, 925 F.2d at 948; Grutter, 188 F.3d at 399. The Court credits the plaintiffs' argument that class certification is less likely if the

---

[4] In addition, the plaintiffs counter that the interests of CLPF are not solely economic since it seeks to protect the interests of absent class members who would otherwise be unable to recover in a class action, and to promote the public interest in the enforcement of federal securities laws. See Docket Entry No. 166, at 5 n.1.

9

individual investors, John Richard Beach and Donald Lloyd, serve as representative plaintiffs for a proposed class of both individual and institutional investors. As the Court pointed out in Bridgestone, supra, requiring individual investors to file separate lawsuits would "unnecessarily multiply litigation, lead to potentially different results and defeat the purpose of class action lawsuits." 430 F. Supp.2d at 740. Thus, the Court finds that impairment of CLPF's substantial interest in this litigation is at least possible if intervention were denied.

### D. Adequacy of Representation

The defendants asserted that the plaintiffs have not shown that the current plaintiffs--John Richard Beach and Donald Lloyd--cannot serve as class representatives.

This factor blends into the consideration of impairment of the movant's interest. Again, the movant has only a minimal burden of showing that the existing parties may not adequately represent the movant's interest. Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); Blackwell, 467 F.3d at 1008; United States v. Michigan, supra; Grutter, 188 F.3d at 400; Litton by Arnold v. Commissioner of Health & Env't, 973 F.2d 1311, 1319 (6th Cir. 1992); Doe v. Briley, 2007 WL 1345386, * 5 (May 7, 2007) (Trauger, J.).

A determination of adequacy of representation can involve consideration of whether there is collusion between the existing parties or whether the parties have adverse interests to the putative intervenor. See Purnell, 925 F.2d at 949-950. The plaintiffs and the putative intervenor are not adverse and there is no hint of collusion between the plaintiffs and the defendants.

As addressed above, the current plaintiffs may not be able to adequately represent the proposed class. Therefore, CLPF has met its minimal burden of showing that the existing plaintiffs may not adequately represent its interest.

Taking into account that the Sixth Circuit has directed that requests for intervention be treated liberally, along with the minimal standards for determining impairment of interest and inadequate representation, the Court finds that the motion to intervene should be granted.

Having determined that intervention is appropriate under Rule 24(a)(2), it is not necessary to address whether the movant should be granted permissive intervention under Rule 24(b)(2).

Discovery Issues

Although the defendants proposed modifications to the scope of discovery addressed in the orders entered August 27, 2009, and September 3, 2009 (Docket Entry Nos. 121 and 123), which the plaintiffs opposed, see Docket Entry Nos. 154, 164, and 165, the parties were able to reach a resolution on these issues and submitted a proposed order modifying the discovery plan, which was entered on November 13, 2009, see Docket Entry Nos. 167 and 168, obviating the need to address those issues at the November 12, 2009, hearing.

Any party desiring to appeal any order of the Magistrate Judge may do so by filing a motion for review no later than fourteen (14) calendar days from the date of service of the order. The motion for review must be accompanied by a brief or other pertinent documents to apprise the District Judge of the basis for the appeal. See Local Rule 72.02(b).

It is so ORDERED.

*[signature]*
JULIET GRIFFIN
United States Magistrate Judge